CASE 8.—ACTION BY CHARLES RATLIFF AGAINST E. H.
        DANIEL AND OTHERS.—October 20, 1909.

## Ratliff v. Daniel's Exr, &c.

Appeal from Caldwell Circuit Court.

J. F. GORDON, Circuit Judge.

Defendant Daniel having died pendente lite, the
case was revived against his executor. From the
judgment for defendants, plaintiff appeals.—Af-
firmed.

1.  Appeal and Error—Review—Harmless Error—Requiring
    Amendment to Petition.—Where, in an action for setting
    fire to a building, the petition charged in effect that de-
    fendants had set fire to it, and also charged that de-
    fendants incited others to do so, whether the court was
    right in requiring plaintiff to allege that he did not know
    which state of facts was true is immaterial; he having
    amended his petition to conform to the court's rulings, the
    whole matter being placed in issue, and trial being had
    on the merits of the whole case.
2.  Witnesses—Competency—Persons Interested in a Decedent's
    Estate.—Civ. Code Prac. Sec. 606, subsec. 2, which forbids
    a person to testify for himself as to a statement of a per-
    son since deceased or as to an act done or permitted to be
    done by him, except for the purpose and to the extent of
    affecting one who is living and who, when over 14 years
    of age and of sound mind, heard such statements or was
    present when such transaction took place or when such
    act was done or committed, unless among other things, a
    representative of or some one interested in the estate shall
    have testified against such person with reference thereto,
    clearly recognizes the right of persons interested in an
    estate to testify for its protection when it is sued by a
    third person, and hence a devisee may testify in favor of
    the executor sued for a wrongful act of the testator.

3. Fires—Civil Liability—Evidence—Relevancy of Indictment.—
In an action against an executor charging his testator with
the burning of plaintiff's house, the court properly refused
to allow to be read an indictment of defendant's testator for
the burning of such house.

4. Fires—Action for Setting Fire—Admissibility of Evidence.—
In an action against an executor charging his testator with
the burning of plaintiff's house, plaintiff was properly not
allowed to show by an insurance agent that his main wit-
ness living near the house had renewed a policy of insur-
ance on her property shortly before the fire; there being
nothing in his evidence connecting the testator therewith.

5. Evidence—Attack on General Character—Rebuttal Evidence.
—Where, in an action against an executor charging his
testator with the burning of plaintiff's house, plaintiff offered
proof attacking the testator's general character, the court
properly allowed defendant to show in what respect his
moral character was bad.

6. Trial—Instructions—Conformity to Evidence.—Instructions
should be based on the evidence, and a view of the case
should not be set out in an instruction when there is no
evidence to support it.

7. Fires—Actions for Setting Fire—Evidence.—In an action
against an executor charging his testator with the burning
of plaintiff's house. Held, that there was nothing in the
evidence tending to show that his testator procured or in-
duced any one else to set fire to the building.

SELDEN Y. TRIMBLE, JNO. C. GATES, BREATHITT & BELL
and TRIMBLE & BELL for appellant.

HODGE & HODGE, WARD HEADLEY AND J. ELLIOTT
BAKER for appellees.

OPINION OF THE COURT BY JUDGE HOBSON—Revers-
ing.

Charles Ratliff owned a storehouse on the corner
of Main and Eddyville streets in Princeton, Ky.; the
lot running back to Washington. In the rear of the
store on the corner of Eddyville and Washington
streets stood a warehouse. E. H. Daniel also owned
property extending from Main street to Washington
street. Their lots did not adjoin on Main street, but

in the rear and on Washington street, they adjoined. On the rear of Daniel's lot was a residence occupied by Mrs. Mollie Boyd as his tenant, which fronted on Washington street. On October 25, 1902, Daniel's warehouse took fire, and for some years afterwards the fire seems to have been regarded as accidental; but nearly three years afterwards when Daniel had refused to marry Mrs. Boyd, and she complained that he had broken a marriage contract with her, she gave out that Daniel had set fire to Ratliff's house and had burned it. On October 2, 1905, after this had come to Ratliff's ears, he brought this suit against Daniel charging that he had burned his house, and that the house and contents were of value $7,817. Daniel filed an answer in which he denied the allegations of the petition. A trial was had which resulted in a hung jury. After this Daniel died, and after his death at the October term, 1908, the case being revived against his executor, a second trial was had, which resulted in a verdict and judgment for the defendant. The plaintiff appeals.

The plaintiff alleged in his petition that Daniel himself, or by inducing and inciting other person or persons to the plaintiff unknown, wrongfully and willfully set fire to the building. The defendant moved the court to require the plaintiff to elect whether he would rely upon the allegation of his petition to the effect that E. H. Daniel set fire to the building, or upon the allegation that Daniel induced or incited other persons to set fire to it. The court ruled that the plaintiff must make the election, or allege that one or the other state of facts was true and that he did not know which was true. Thereupon the plaintiff interlined his petition by stating that he did not know which state of facts was true.

The defendant then filed his answer, and the case proceeded. Whether the court was right in requiring the plaintiff to allege that he did not know which state of facts was true is immaterial. The plaintiff amended his petition to conform to the ruling of the court; the whole matter was placed in issue; and the trial was had on the merits of the whole case.

The defendant on the last trial read to the jury the testimony of E. H. Daniel given on the first trial. The fire occurred about midnight. The defendant introduced Miss Jessie Simmons, who lived at Daniel's house, and proved by her that on the night of the fire Daniel came home about half past 9 and went to bed, and that he was in bed asleep and was waked up when the fire occurred; that he did not leave home after he came there that night until he was sent for to come to the fire. Daniel had left a will which had been probated, and by this will he had devised to Miss Simmons his estate. It was insisted for the plaintiff that she was testifying for herself, and under section 606 of the Civil Code of Practice could not testify as to anything done or omitted to be done by Daniel, as he was dead. Subsection 2 of section 606 is in these words: "Subject to the provisions of subsection 7 of this section, no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by, an infant under fourteen years of age, or by one who is of unsound mind or dead when the testimony is offered to be given except for the purpose and to the extent, of affecting one who is living, and who, when over fourteen years of age and of sound mind, heard such statement, or was present when such transaction took place, or when such act was done or omitted, unless the infant or his guar-

dian shall have testified against such person, with
reference to such statement, transaction or act; or
the person of unsound mind shall, when of sound
mind, have testified against such person, with refer-
ence thereto; or, the decedent, or a representative of,
or some one interested in, his estate, shall have testi-
fied against such person, with reference thereto.''

It will be observed that by the statute a person
may not testify for himself as to a statement of a
person since deceased or as to an act done or omitted
to be done by him, except for the purpose and to the
extent of affecting one who is living and who when
over 14 years of age and of sound mind heard such
statements or was present when such transaction
took place or when such act was done or omitted, un-
less, among other things, a representative of or some
one interested in the estate shall have testified
against such person with reference thereto. The
statute thus clearly recognizes the right of persons
interested in an estate testifying for its protection
when the estate is sued by a third person, for, if
those interested in the estate could not testify as to
acts done or omitted by the decedent, the exception
would be without meaning. This precise question
was before us in Moore v. Moore's Adm'r, 101 S. W.
358, 30 Ky. Law Rep. 1370. We there said : ''While
no person may testify for himself as to a transaction
with or an act done or omitted to be done by a de-
cedent, a person, although he may be interested in
the estate, may testify for the decedent's estate, and
for its protection against one who is living. The
statute was not designed to deprive the estate of a
decedent of the testimony of the persons most likely
to be able to protect it.''

The grand jury upon the testimony of Mrs. Boyd indicted Daniel for the burning of the house. The plaintiff offered to read the indictment to the jury. The court properly refused to allow it to be read. A conviction for felony may be shown, but an indictment for felony may not be shown. The plaintiff was properly not allowed to show by the insurance agent, Mills Wood, that Mrs. Boyd had renewed a policy of insurance on her property shortly before the fire. There was nothing in his evidence connecting Daniel with this. The plaintiff offered proof attacking the general character of Daniel. The court properly allowed the defendant to show in what respect his moral character was bad. The fact that Daniel executed the deed of October 2d was before the jury; but, explained as it was, the fact was of little value.

At the conclusion of all the evidence the court instructed the jury, in substance, that if they believed from the evidence that Daniel set fire to the plaintiff's house, and thereby caused the building or any of its contents to be consumed or destroyed by fire, they should find for the plaintiff. He refused to give an instruction asked by the plaintiff to the effect that the jury should find for the plaintiff if they believed from the evidence that Daniel either in person, or by inciting or inducing some one else so to do, set fire to the building and thereby caused it to be destroyed. The only difference between the instruction given and that refused was that the instruction refused contained these words "either in person, or by inciting or inducing some one else so to do." The court also refused to so tell the jury when asked the question by them. It may be conceded that Daniel burned the house if he set fire to it with his own hands, or if he procured another to set fire to it, and

that he is equally liable in either case; but the instructions of the court to the jury should be based upon the evidence, and a view of the case should not be set out in an instruction when there is no evidence to support it.

The plaintiff's whole case rested upon the evidence of Mrs. Boyd and her son. She testified, in substance, as follows: Some days before the fire Daniel told her the warehouse would not stand long; that he did not like Ratliff; that he wanted her son to come to his store and help him to connect the hose to the fire plug because Ratliff's warehouse was going to burn in about two weeks, and he wanted to have the hose on in order to save her house. That he asked her when her insurance would run out, told her to keep insured, and about a month before the fire she did renew the insurance with $12.50 which he gave her, telling her at the time it would not be very long until Ratliff's house would be burned down. He said, "Revenge is sweet," and he did not like any of the Ratliffs. That on the night of the fire between 9 and 10 o'clock Daniel came to her house and wanted to borrow a dress of hers. She asked him what he was going to do. He said it would be all right, that he had some dirty work to do, she would know directly, and he wanted to borrow one of her dresses to put on. That he did not want any one to know who he was. She got an old calico motherhubbard, and he put it on and went down toward the Ratliff warehouse with something in his hands. It was not long until he came back. She asked him what he had done, and he said: "It is all right. You will see in a short while what I have done." Shortly after this the alarm of fire was given, and the warehouse was discovered to be on fire. After the fire he said to her,

"I told you the warehouse was going to burn in about two weeks, and it sure did." The testimony of her son was to the same effect as his mother's as to the hose, and as to some similar statements made to him by Daniel.

Another witness testified that he came along the street shortly before the fire alarm was given, and a negro came running down the street who bore off to one side so that he could not see who it was. He went on home, and after he got home the alarm of fire was given. There was nothing in this evidence to show or tending to show that Daniel had procured or induced any one else to set fire to the building. If the testimony for the plaintiff was true, he had burned it; and, if the jury had believed this testimony, they would have so found. There was nothing in the evidence tending to show a conspiracy between Daniel and anybody else to burn the house or connecting any one else with the burning of it. To have submitted this issue to the jury would have been to submit to them a view of the case on which there was no evidence.

The proof showed that Daniel and Ratliff were good friends. No motive for such a deed is shown when we take all the evidence. Mrs. Boyd and her son were thoroughly impeached. The case rested wholly upon their testimony to connect Daniel with the fire; and, in view of all the facts, we conclude that, in any view of the matter, the ends of substantial justice do not require a new trial of the action. Daniel's property was similar to Ratliff's. It was wholly uninsured. That Daniel had procured another person to set the building on fire, and then had placidly gone home and gone to sleep without taking any precaution for the protection of his own prop-

erty, no jury would have believed. If the testimony of Miss Simmons is true, the testimony of Mrs. Boyd can not be true, for, according to Mrs. Boyd, it was not long after Daniel left her house before the alarm of fire was given. Ratliff regarded Daniel at the time as his friend, and it is incredible that such a crime as this would have been committed by a man without adequate motive, and of this there is no evidence.

Judgment affirmed.