THOMAS BROWN et al.

v.

THEODORE H. SCHINTZ, Trustee, et al.

202    509
e203   138
e109a  603

*Opinion filed April 24, 1903.*

1. APPEALS AND ERRORS—*when certificate of evidence may state what the evidence tends to show.* If only legal questions are sought to be raised on appeal, it is sufficient if the bill of exceptions or certificate of evidence states the evidence tended to prove the issues.

2. BILLS AND NOTES—*effect of laches in presenting check.* If all the parties interested in a check reside in the city where the drawee bank is located, the check must be presented, at the farthest, within banking hours on the next day after it is delivered, and failure of an endorsee of the check to so present it releases the endorser where the check would have been paid if so presented.

3. SAME—*maker of a check remains liable unless he has suffered loss.* The maker of a check remains liable thereon unless he suffers loss by reason of the holder's failure to present it to the bank for payment in apt time.

4. MORTGAGES—*when check is a payment on building loan.* If the trustee in a deed of trust, made to secure a building loan, makes and delivers a check to the mortgagor, who immediately endorses and delivers it to the contractor, the failure of the latter to present it for payment in apt time, which results in the bank's refusal to pay, releases the mortgagor from liability on the check, and to that extent from liability upon his indebtedness to the contractor; and hence, as between the mortgagor and the holder of the trust deed, the check is a payment upon the building loan, and constitutes consideration, *pro tanto*, for the deed.

MAGRUDER, C. J., dissenting.

*Brown* v. *Schintz*, 98 Ill. App. 452, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

George Wheatman and William Boulton, co-partners, and John Beaubien, filed their petition in the circuit court of Cook county on August 9, 1897, to enforce a sub-contractor's lien on lot 45, block 1, etc., in the city of Chicago. The defendants were Thomas Brown, the

owner and occupant of said lot, and Elizabeth Brown, his wife, and Theodore H. Schintz, trustee in two trust deeds executed to him by Brown and wife to secure two notes, one for $2500 and the other for $700, payable to Schintz, the first having been assigned by him to Jacob Huber and the second to Nicholas J. Mann, who were likewise defendants, together with certain persons claiming mechanics' liens upon the lot under contracts with Brown for the erection of a building thereon and for labor and material for the same. The interests of the latter defendants are not involved in this writ of error. Brown and wife and Huber and Mann answered, but Schintz was defaulted. Huber and Mann in their answer set up the trust deeds and notes held by them, respectively, and prayed a foreclosure thereof. The cause was referred to the master to take testimony and report his findings, which he did, to which objections were filed and overruled and the same ordered to stand as exceptions to said report. He found against the claim of Huber and Mann, and that the petitions, intervening petitions, cross-petitions, and all answers claiming mechanics' liens on the premises, should be dismissed for want of equity. The chancellor confirmed the master's report as to all mechanic's lien claims, but sustained exceptions thereto on behalf of Huber and Mann, and entered a decree in favor of the former for $1069.73 and costs, and in favor of the latter for $300.84 and costs, both subject to a receiver's trust deed for $600. Brown and wife alone prosecuted an appeal to the Appellate Court for the First District, and the branch of that court affirmed the decree of the circuit court. To reverse that judgment of affirmance this writ of error has been sued out.

The facts are undisputed. Thomas Brown, the owner of the lot in question, applied to Theodore H. Schintz for a loan of $3200 with which to erect a building on the same, to be secured by trust deeds upon the premises. Schintz agreed to make the loan, and Brown executed

one note for $2500 on April 26, 1897, payable to his own order, due in five years, with interest notes of $75 each, due every six months, and endorsed said several notes to the defendant in error Jacob Huber. He and his said wife also executed a trust deed upon the premises to Schintz, as trustee, to secure these notes, which was duly recorded April 27, 1897. On the same day he executed another note for $700, with interest coupons, which he endorsed to defendant in error Nicholas J. Mann, and he and his wife executed another trust deed of the same date to Schintz, trustee, to secure said last mentioned notes, conveying the same lot, which was also duly recorded May 5, 1897. Schintz agreed to advance the money on the loan as the building progressed and the mechanics erecting the same should become entitled to payment. On July 16, 1897, he made his two personal checks, payable to the order of Thomas Brown, on the Merchant's Loan and Trust Company, and delivered the same to him,—one for $1075, which on the same day was endorsed by Brown to C. S. Mattice & Co., contractors on the building, and by them immediately endorsed to Wheatman & Boulton, sub-contractors; the other for $125, which on the same day Brown endorsed to C. S. Mattice & Co., and they immediately endorsed to James Dwyer, another sub-contractor. Neither of said checks was presented to the payee bank until the 19th day of July following, at which time payment was refused because, as stated by the bank, the drawer, Theodore H. Schintz, had on that day made an assignment for the benefit of his creditors. He had a balance on deposit in the bank when he made the checks and at the close of business hours on Saturday, July 17, amounting to about $2000, (more than enough to pay both checks,) and, so far as the evidence shows, that money remained in the bank at the time of the general assignment by Schintz. The Merchant's Loan and Trust Company was located in, and Schintz and all the persons to whom the checks were

issued and transferred resided in, the city of Chicago. The building in progress of erection on the lot was not completed at the time of the general assignment by Schintz, and learning of that fact the contractors abandoned the work. A receiver was then appointed for the premises, who was authorized by the court to borrow $600 to complete the building, which order was made by consent of all the parties in interest, the certificate of that loan to be a first lien upon the premises and all assets in the receiver's hands, together with the rents, etc. He accordingly borrowed $600, executing a trust deed to secure the same, with which he completed the building. That trust deed is by the final decree made a superior lien to the trust deeds held by Huber and Mann. Nothing was paid upon the building loan of $3200, unless the two checks above mentioned amounted to such payment. The correctness of the amounts found due Huber and Mann, if they are entitled to recover, is admitted.

ALBION CATE, for plaintiffs in error.

IVES, MASON & WYMAN, for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Counsel for defendants in error object that the transcript of the record is incomplete and insufficient to present the errors insisted upon. The principal question raised in the Appellate Court, and again in this court, is whether the above named checks constituted payments by Schintz to Brown on the $3200 building loan. The parts of the record contained in the transcript sufficiently present that question, and for such purpose the transcript is sufficient. (See authorities cited in the opinion of the Appellate Court.) Of course, errors cannot be insisted upon which the transcript fails to show. As was said in *Bertrand* v. *Taylor*, 87 Ill. 235: "This court cannot properly consider any question arising upon the record unless we have a full record before us, or it is made known

to us in some approved manner that the transcript contains all parts of the record material to the question submitted to us for decision." See, also, *Culver* v. *Schroth*, 153 Ill. 437; *Deimel* v. *Parker*, 164 id. 627.

It is further objected that the transcript is insufficient because the certificate of evidence certifies only what the evidence *tended to show*. For the purpose of raising legal questions it is sufficient if it appears from the bill of exceptions or certificate that the evidence tended to support the issue. *Costly* v. *McGowan*, 174 Ill. 76; *Johnson* v. *Johnson*, 187 id. 86.

On the principal question, as above stated, the controversy is between Brown and wife and Huber and Mann, whether or not the decree in favor of the latter is, under the law, authorized by the facts. They claim only the amount of the two checks mentioned in the foregoing statement, amounting to $1200, and interest to be prorated between them according to the amounts held by them, respectively, against Brown, their contention and the holding of the courts below being that such checks were payments, upon the consideration for which their trust deeds were given,—that is, an advancement to that amount by Schintz upon the building loan. It is conceded that, deriving their interest in those trust deeds by assignment from Schintz, they held them subject to all the infirmities to which they would have been subject in his hands. The position of counsel for plaintiffs in error is, that under the facts the making and delivery of said checks to Thomas Brown were in no proper sense payments upon said loan, and therefore the consideration for the notes and trust deeds wholly failed,—a complete defense against the trust deeds in the hands of Schintz, and, consequently, against his assignees. They say these checks were absolutely worthless. But that is not a fair statement of their real character. At the time they were drawn and delivered to Brown, the drawer (Schintz) had funds on deposit sufficient to pay them in

full, and hence they were at that time perfectly good. Although they were not actually paid to the parties to whom Brown assigned them, that was because the parties failed to present them to the Merchant's Loan and Trust Company in apt time. The non-payment was attributable wholly to the negligence of the holders. All parties agree that the bank being located and all parties interested residing in the same city, it was the duty of the payee or his assignees (the same diligence being required of the assignees as of the drawee) to present the checks to the bank for payment on the same day, or, at farthest, the next day, after they were delivered and endorsed, within banking hours, and that the failure to do so absolutely discharged the endorser, Brown. (*Bickford* v. *First Nat. Bank,* 42 Ill. 238; Story on Promissory Notes, 495; *Strong* v. *King,* 35 Ill. 9; 5 Am. & Eng. Ency. of Law, —2d ed.—1042; 2 Daniel on Neg. Inst. 516; 2 Randolph on Com. Paper, 1103; *Merchant's Bank* v. *Spicer,* 6 Wend. 443; *Little* v. *Phenix Bank,* 2 Hill, 423; *Veazie Bank* v. *Winn,* 40 Me. 60.) The maker, Theodore H. Schintz, however, remained liable unless he suffered some loss by reason of the holder's failure to present them in apt time. (See same authorities.) Brown received the checks on Friday, July 16, and immediately endorsed them to his contractors in payment of his liability to them. They neglected to present them to the bank on or before the next day, Saturday, the 17th, but held them until the following Monday, the 19th, when payment was refused. It is agreed that if presentment had been made on Saturday they would have been paid in full. Under this state of facts there can be no doubt that Brown, as endorser, was discharged from all liability upon them.

It is well settled that as between Brown and the parties to whom he endorsed the checks there was, under the facts, an absolute payment of his liability to the endorsees to the amount of $1200. Thus, it is said in Story on Promissory Notes (sec. 104): "If a creditor accepts

the note of a third person, or draft or bill, though not in payment, he accepts the duty of doing everything necessary to fix the liability of the parties to the paper." And again (sec. 117): "On the other hand, the party receiving the same is bound, under such circumstances, to make due presentment of the note and to give due notice of its dishonor, otherwise by his *laches* he makes the note his own and discharges the party from whom he received it from any loss sustained thereby." In his work on Bills of Exchange (4th ed. sec. 112,) the same author says: "The receipt of a bill implies an undertaking on the part of the endorsee, receiver or other holder, to every other party to the bill who would be bound to pay it and who would be entitled to bring an action on paying it, to present it in proper time when necessary for acceptance, and at maturity for payment. A default in any of these respects will discharge the party in respect to whom there has been any default, and who otherwise would be bound to pay the same, from all responsibility on account of the non-acceptance or non-payment of the bill, and will operate as a satisfaction of any debt or demand for which it was given." Daniel, in his work on Negotiable Instruments, (sec. 1623,) states the rule as follows: "The receipt of a check, therefore, before presentment, if there is no *laches* on the part of the holder, is not payment of the debt for which it is delivered. But if the party receiving it is guilty of *laches* in presenting it, and the bank in the meantime suspends payment, he thereby makes it his own and it shall operate as payment of his debt, the drawer having funds in the bank at the time of drawing the check and not having withdrawn them." See, also, 3 Randolph on Com. Paper, 1562.

This controversy, as before said, is between Brown and wife and Huber and Mann. The assignees of the checks are not parties to this writ of error and their rights are in no way involved. Brown received the checks in part payment upon his contract with Schintz

to furnish the money for the building, in consideration of which his notes and trust deeds were executed. He paid them on his liability to his contractors under circumstances which made that payment absolute, and legally discharged him, to that extent, from all further liability upon that indebtedness. How can he then be heard to say he received no part of the consideration for which his notes and trust deeds were executed?

It is claimed by counsel for plaintiffs in error that the holders of the checks produced them before the master, who returned them into court with his report, and they say they are not outstanding and will be treated as canceled, within the rule announced in *Heartt* v. *Rhodes*, 66 Ill. 351. As a matter of fact, the record shows that the one for $1075, assigned to Wheatman & Boulton, was offered in evidence on behalf of Huber and Mann, and the one for $125, assigned to Dwyer, was introduced by Brown. We find nothing whatever in the record tending to show that they were at any time tendered back to Brown by his endorsees, or that he had authority or at any time attempted to surrender them to be canceled. The larger one was offered in evidence to prove the indebtedness claimed by Huber against Brown, and the smaller one to disprove the existence of a mechanic's lien in favor of Dwyer. If Brown had waived his legal right to insist upon the payment to his contractors and taken up the checks and brought them into court, offering to surrender them, the case of *Heartt* v. *Rhodes*, *supra*, might have some application, in principle, to the case at bar, but in Brown's present attitude it has no application.

We are unable to see, from the facts before us concerning the assignment by Schintz for the benefit of his creditors, (there being an absence of proof as to what, if anything, had been done under that assignment at the time the checks were presented for payment, or since,) why the holders could not have compelled the bank to pay them, or, at least, maintained a preferred claim.

against the estate of Schintz in the hands of his assignee. The checks operated as an assignment of so much of the deposit of Schintz in the Merchant's Loan and Trust Company as they called for, to Brown and his assignees, and when they were presented to the bank it became liable to pay them, provided Schintz had funds to that amount in its hands subject to his check at the time they were presented. (*Munn* v. *Burch*, 25 Ill. 21; *Brown* v. *Leckie*, 43 id. 497; *Wyman* v. *Fort Dearborn Nat. Bank*, 181 id. 279, and cases cited.) The failure to present them for payment within a reasonable time, as above stated, did not relieve the bank from the duty of paying them, provided there were funds to the credit of Schintz when they were presented, sufficient to pay them. The bank refused to pay them, not because any part of the $2000 on deposit with it had been drawn out or checks drawn against it which had been previously presented, but simply because Schintz had made an assignment for the benefit of his creditors. It is said by Mr. Daniel in his work on Negotiable Instruments (vol. 2, p. 558): "We have seen already that a check operates as an assignment of the fund on which it is drawn, *pro tanto*, from the very time it is drawn and delivered, as between the drawer and the payee or holder; and secondly, that the assignment binds the bank as soon as the check is presented; thirdly, that as between the drawer and holder on the one part, and a party claiming under a subsequent assignment on the other, that if the latter holds a check also, and first presents it, he thereby acquires priority over the check not previously presented. And any subsequent assignee to whom the bank had assented to pay the amount would in like manner acquire priority, as the bank would be bound to pay him in preference to the prior checkholder who had not presented the check. But if the checks were presented before any subsequent assignee had obtained the assent of the bank, and thus brought it in privity of contract with it, we should say that by such presentment

the checkholder acquired priority, for the reasons that have been heretofore considered; and, therefore, a general assignment for the benefit of creditors would not defeat the checkholder although he had not presented the check,"—citing *Roberts* v. *Austin,* 26 Iowa, 327. This doctrine would seem to be consistent with our decisions. But however that may be, it cannot be said, on the evidence in this record, that the checks are wholly worthless, or, in fact, that they are not worth their face value either against the bank or the assignee of Schintz, even in the hands of the assignees of Brown. Certainly, Brown having received and retained the full face value of them, he cannot be heard to say they are without value, and he alone is here seeking to have them so declared.

Counsel for plaintiffs in error says that defendants in error are attempting to receive something for nothing. It is not denied that they paid in money not only the $1200 which they are seeking to recover for the notes and trust deeds, but the full consideration named therein, $3200. Thomas Brown is, in fact, the party who seeks to avoid all liability on his notes and trust deeds, notwithstanding he had received the full benefit of the amount of said checks.

Some of the other alleged errors are not properly raised by the transcript, but they, with all others insisted upon, are properly disposed of by the opinion of the Appellate Court.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE MAGRUDER delivered the following dissenting opinion:

The controversy in this case is between Thomas Brown, the owner of the premises in question, and Jacob Huber and Nicholas J. Mann, the holders of the notes and trust deeds, executed by Brown and his wife to Theodore H. Schintz, trustee. Defendants in error, Huber and

Mann, are seeking to enforce their trust deeds against the premises, owned by Brown, for the amount of the checks, executed by Schintz to Brown on Friday, July 16, 1897, one of the checks having been for $1075.00 and the other for $125.00, aggregating $1200.00. Mann and Huber concede that they are only entitled to liens, if they are entitled to any at all under their trust deeds, for said sum of $1200.00 in the proportions in favor of Huber of $\frac{25}{32}$, and in favor of Mann of $\frac{7}{32}$, together with interest and costs.

Substantially the only question, involved in the case, is whether said checks constituted a payment, or a passing of the consideration upon the building loan to the extent of $1200.00 from Schintz to Brown.

The checks in question were not executed by Huber and Mann, but by Theodore H. Schintz. Huber and Mann, however, are seeking to enforce the trust deeds in question against the property of Brown to the amount of the checks, so executed by Schintz. It follows that Huber and Mann are either seeking to enforce the trust deeds for Schintz who gave the checks, or that Schintz held money belonging to Huber and Mann, for which he gave the checks. The notes, executed by Brown, were payable to his own order and were sold by Schintz to Huber and Mann. The notes were dated April 26, 1897, and the checks were not given or dated until July 16, 1897. As the defendants in error, Huber and Mann, are seeking to enforce securities for checks given by Schintz, this case must be treated the same as though Schintz, and not either Hubert or Mann, is the party seeking relief.

It is conceded that Wheatman & Boulton, and Dwyer, the holders of the checks, received no money upon them from the Merchant's Loan and Trust Company, the bank, upon which the checks were drawn; and yet it is contended that the defendants in error, Huber and Mann, must be regarded as having paid to Thomas Brown the amounts represented by the checks. When the checks were handed to Brown he endorsed them and delivered

them to Mattice & Co., the contractors upon his building., Mattice & Co. endorsed the checks and delivered them to certain sub-contractors, who presented them for payment without succeeding in getting payment thereof.

The first legal proposition, advanced by defendants in error, is that the sub-contractors did not present the checks within a reasonable time, or within the time, within which the law requires them to be presented, and that, therefore, Thomas Brown, as endorser of the checks, was released from his liability as such endorser. Undoubtedly, where all the parties to a check, and the bank upon which it is drawn, reside or are located in the same town or city, the payee or endorsee has until the close of banking hours the next day to present the check for payment, and if it is not so presented, the endorser is absolutely discharged. (*Bickford* v. *First Nat. Bank,* 42 Ill. 238; *Strong* v. *King,* 35 id. 9; Story on Promissory Notes, —7th ed.—sec. 495; *Little* v. *Phenix Bank,* 2 Hill, (N.Y.) 425; *Merchants' Bank* v. *Spicer,* 6 Wend. 443; *Veazie Bank* v. *Winn,* 40 Me. 60). The general doctrine is embodied in the following statement: "It is well settled that, where the person, receiving the check, and the banker, on whom it is drawn, are in the same place, in the absence of special circumstances it must be presented for payment the same day, or at least the day after it is received. * * * If presentment be not made within a reasonable time and notice of dishonor be given, the endorser is absolutely discharged." (5 Am. & Eng. Ency. of Law,—2d ed.—pp. 1042, 1045).

In the case at bar, the checks were received by Brown, and by the endorsees above named, upon Friday, July 16, 1897; but the holders of them did not present them upon the next day, to-wit, Saturday, July 17, 1897, but waited until Monday, July 19, 1897, and presented them upon the latter day. Payment was refused because the drawer, Schintz, had before the presentation of the checks by the holders thereof made an assignment for the benefit of his creditors, and notice of such assignment had been

communicated to the bank, upon which the checks were drawn. Under the authorities above referred to, the holders of the checks were guilty of *laches* in not having presented them for payment during banking hours on Saturday, July 17, 1897. If they had been presented upon the latter day, they would have been paid. The effect of this *laches* may have been, as is contended by the defendants in error, to release Thomas Brown as endorser upon the checks.

While it may be true, however, that Thomas Brown, as endorser upon the checks, was released from liability as such endorser in case suit or suits had been brought against him upon the checks, it is not true that, on account of such delay in the presentation of the checks and on account of the refusal of the bank to pay the same, Schintz, the drawer of the checks, was released from his liability to the holders thereof. "Although there is no difference in the degree of diligence required in the case of bills of exchange and checks, yet they differ in respect to the legal consequences of negligence and delay in presentment, for in the case of checks the drawer is not discharged by the delay or negligence in presentment unless he has suffered loss thereby, as by the failure of the bank, and then he is only discharged *pro tanto*." (5 Am. & Eng. Ency. of Law,—2d ed.—p. 1044; *Bickford* v. *First Nat. Bank*, *supra;* Story on Promissory Notes,—7th ed.— sec. 492; *Stevens* v. *Park*, 73 Ill. 387; *Strong* v. *King*, *supra*).

Story in his work on Promissory Notes, (2d ed. sec. 492) says: "In case of a check the drawer is treated as in some sort the principal debtor, and he is not discharged by any *laches* of the holder in not making due presentment thereof, or in not giving him notice of the dishonor, unless he has suffered some loss or injury thereby, and then only *pro tanto*."

In *Stevens* v. *Park*, *supra*, we said: "The only question discussed in the present case is, was the burden on the holder of the bank check of showing that no damage had

accrued to the drawer by his omission to give notice of the non-payment of the check? * * * As between the holder and the drawer, a demand at any time before suit brought, is sufficient, unless it appears that the drawee has failed, or the drawer has, in some other manner, sustained injury by the delay."

In the case at bar, Schintz, the drawer of the checks, suffered no injury by the delay in the presentation of the checks. Indeed, it was his own fault that the checks, when presented to the bank upon which they were drawn, were not paid, because he made an assignment for the benefit of his creditors, and thereby performed the act which led to the refusal of payment by the bank. (*Laclede Bank* v. *Schuler*, 120 U. S. 511). Therefore, it may be true, as is contended by counsel for defendants in error, that Schintz is still liable as drawer of these checks to the holders thereof, notwithstanding the delay in their presentation for payment. Defendants in error contend that in some way they are still liable to pay these checks because Schintz is liable. They reason that, because Schintz or they themselves may at some time be sued upon the checks as drawers thereof, and be compelled to pay the same, therefore they are entitled to foreclose their trust deeds to the extent of the amounts for which the checks were drawn, upon the theory that such checks were payments of so much money upon the building loan to Thomas Brown. Whatever force, if any, there might be in this contention under other circumstances, it has no force under the facts of this case, as shown by the record.

It appears that, upon the taking of the testimony before the master, the checks were introduced in evidence, and surrendered, and filed as exhibits, and left with the master, and returned into court, and are now in the custody of the court and beyond the control of the holders thereof. In view of this fact, Schintz, the drawer of the checks, cannot hereafter be held liable for the amount of them.

In *Heartt* v. *Rhodes*, 66 Ill. 351, where the holder of an accommodation note accepted from the payee, for whose accommodation the same was executed, a check on a bank for the balance due thereon, and surrendered the same, it was held that, in the absence of proof to the contrary, it would be presumed the check was taken as a means to procure the money to pay the note, and not as an absolute payment, and in that case we said (p. 353): "Objection is made that a recovery by the plaintiff was permitted, while he retained the check of Dickson, upon which he may collect the amount a second time. We do not consider such to be the fact. The check was produced in court, and there left, where it has since remained among the files of the court. The plaintiff's deposition was taken in the case, to which he annexed the check, which was returned into court with the deposition, and remains there as a part of it. The production of the check was in nowise essential to the making out of the plaintiff's case, and we may consider that it was annexed to, and returned with, the deposition, for the purpose of being surrendered or canceled. It, to be sure, was not formally canceled, but we must regard it as virtually so. It is neither in the plaintiff's possession nor power, but in the custody of the court, and cannot be withdrawn by the plaintiff, unless by leave of the court. Such leave should not be granted; and it is to be presumed the court will not permit plaintiff to withdraw the check."

It is well settled that the mere giving of a negotiable note or its endorsement to a third person does not extinguish the original cause of action, if the payee can show that the note has been lost, or can produce it on the trial to be canceled. If a note or bill is lost, or can be produced on the trial for cancellation, a recovery can be had on the original consideration. (*Miller* v. *Lumsden*, 16 Ill. 161; *Stevens* v. *Bradley*, 22 id. 244; *Heartt* v. *Rhodes*, *supra*; *McConnell* v. *Stettinius*, 2 Gilm. 707; *Rayburn* v. *Day*, 27 Ill. 46).

It is also well settled that, where a check is taken in payment of a note or other debt, it will not be regarded as an absolute payment, unless there is a special agreement to that effect. (*Heartt* v. *Rhodes, supra; Rayburn* v. *Day, supra; Bailey* v. *Pardridge,* 134 Ill. 188; *VanCourt* v. *Bushnell,* 21 id. 624; *Paddock* v. *Stout,* 121 id. 571; *Jackson* v. *Bailey,* 12 id. 159).

Story in his work on Promissory Notes (7th ed. sec. 104) says: "In general, by our law, unless otherwise specially agreed, the taking of a promissory note for a pre-existing debt, or a contemporaneous consideration, is treated *prima facie* as a conditional payment only, that is, as payment only if it is duly paid at maturity."

There is no pretense, that any agreement existed between Schintz or Huber and Mann on the one side, and Thomas Brown on the other, that the checks given to the latter should be regarded as an actual payment of so much of the $3200.00 agreed to be advanced to him as a building loan, without reference to whether the checks when presented should be paid or not. There being no such agreement, it will be presumed that each of the checks, as was said in *Heartt* v. *Rhodes, supra,* "was taken but as the means whereby to procure the money for payment of the" expected loan to the extent of $1200.00. In the absence of an express agreement that the checks should be regarded as a payment of $1200.00 on the loan, there was no payment, inasmuch as the bank refused to honor the checks when they were presented.

In some of the cases already referred to, the facts showed that a check had been given in payment of a note, and it was held that, when the check was surrendered, an action for recovery might be had upon the original note. (*Heartt* v. *Rhodes, supra*). In other cases, the facts showed that an account existed by one of the parties against the other for goods sold to the latter, and the note was given for the amount of the goods so sold, and it was there held that, in case of a surrender of the

note, an action might be had upon the original account for goods sold. But, in the case at bar, no antecedent debt existed between Huber or Mann and Schintz on the one side and Thomas Brown on the other. Although notes for $3200.00 were executed, yet there was no consideration for such notes, except so far as money might be advanced to erect the building, and no money was ever advanced, nor anything that called for money, except the two dishonored checks, above described. The checks being surrendered and canceled, there is no prior or precedent obligation existing. In other words, there was no indebtedness existing between the parties except such as was represented by the checks themselves, and, therefore, when the checks were surrendered, as was done in this case, there was no obligation of any kind remaining as against the defendants in error, Huber and Mann. In view of these considerations, it certainly is unjust to allow these defendants in error to foreclose these trust deeds against Thomas Brown to the extent of $1200.00. It is an attempt to get something for nothing. Brown received nothing from defendants in error or from Schintz except two worthless checks, which, being surrendered, can never be the foundation of any cause of action. Defendants in error are seeking to sell the property of the plaintiff in error, Brown, under two encumbrances, which have no consideration whatever as between Brown and defendants in error.

It is claimed, however, on the part of defendants in error, that Brown owed his contractor and his sub-contractors for materials furnished to go into his building and for work and labor done upon his building; and that, when he endorsed and passed over the checks to the contractor and sub-contractors, his debt to them was thereby paid. It is argued, therefore, that inasmuch as he has paid the contractor or the sub-contractors with these checks, defendants in error have the right to enforce the mortgage against this property to the extent of $1200.00.

The right so to enforce these encumbrances does not necessarily result from the fact that Brown endorsed the checks and turned them over to the contractor or subcontractors, or from the fact that the delay in presenting the checks releases him as an endorser thereof. The checks being surrendered and in the custody of the court, as has already been stated, no action can be brought upon them against Brown as endorser. But his indebtedness to the parties, who furnished material for his building and did work thereon, still remains. The surrender of the checks, while it released his liability as endorser, did not release his liability upon his original undertaking with the contractor or sub-contractors. It is true, that the court below held that the sub-contractors had no lien upon the premises, upon the ground that their suits were prematurely brought, and that their contracts were not such as the law requires in order to create a lien. But there is no reason, so far as I can see, why Brown may not be liable to these parties in an action, brought within the time prescribed by the Statute of Limitations, to recover for the value of the materials furnished for him and for the value of the work done for him. If he is sued upon the original indebtedness by these parties and a recovery is had against him, and if defendants in error are allowed to enforce these encumbrances against him to the extent of the amount of these checks, then he will be required to pay the same indebtedness twice. In such case, he will have paid the contractor or sub-contractors upon his original indebtedness to them, but he will have received nothing on the building loan from the defendants in error to reimburse him for the indebtedness so paid.

In any view that can be taken of this case, the decree of the circuit court and the judgment of the Appellate Court are erroneous, and the enforcement of these encumbrances to the extent named, and under the circumstances herein indicated, is a great injustice.