The First National Bank of Chadwick, Ill., Appellee, v.
Daniel S. Mackey, Appellant.

## Gen. No. 5330.

1. AMENDMENTS AND JEOFAILS—*when amendments to bill of excep-
tions not stricken.* In the absence of a bill of exceptions to support
the contention that the amendments of a bill of exceptions were not
predicated upon a memorial, the presumption of regularity will be
indulged in favor of the amendments made.

2. EVIDENCE—*when custom not competent.* A custom is not compe-
tent unless shown to have been known to the party sought to be charged
thereby.

3. NEGOTIABLE INSTRUMENTS—*sections 30 and 71 construed.* It is not
the meaning of such sections of the Negotiable Instrument Act that
a check may be sent for collection in a roundabout way through many
banks, and that the reasonable time for its presentment begins after
the last time it is sent on for collection.

4. NEGOTIABLE INSTRUMENTS—*when endorser discharged for failure
of presentment within reasonable time.* Irrespective of actual damage,
an endorser is discharged by the omission to present a check for pay-
ment within a reasonable time.

Assumpsit. Appeal from the Circuit Court of Carroll county; the
Hon. R. S. FARRAND, Judge, presiding. Heard in this court at the
April term, 1910. Reversed. Opinion filed October 18, 1910.

HENRY MACKEY and A. F. WINGERT, for appellant.

FRANKLIN J. STRANSKY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.
This is a suit by the First National Bank of Chadwick,
Illinois, as indorsee, against Daniel S. Mackey, the indorser
of a check for $520. Plaintiff recovered and defendant
appeals. Appellee filed, by leave of court, an additional
record containing amendments to the bill of exceptions,
striking out certain words in certain exceptions. Appellant
moved to strike this additional record from the files, and
that motion was taken with the case. The main ground of
the motion was that there was nothing in the court below to

amend by. Appellant did not take a bill of exceptions containing the proceedings and proof of the making of the amendment. In the absence of a bill of exceptions, we must presume that the court below did have before it that by which to amend. The presumption is in favor of the regularity of the amendment. The amendment was made in term time on due notice. The motion to strike the amended record from the files is therefore denied.

There were some disputed questions of fact at the trial, but the most important facts were not disputed. Appellant was a farmer, living three and one half miles from the village of Chadwick. J. E. Smith was a horse buyer. Smith had been accustomed for a long time to do his business through the appellee bank. Appellant was accustomed to do his financial business through the First National Bank of Mt. Carroll, in the same county. Appellant had a team of horses for sale at $520 which Smith wished to buy. On the morning of May 21, 1909, appellant called up an officer of the appellee bank and had a conversation with him by telephone upon the question whether these horses would be paid for, about which conversation there is a dispute. Appellant then sent the team to Chadwick by his nephew, Jesse Mackey, with directions to bring home the money for the horses. Jesse delivered the horses to Smith and Smith gave him therefor the check here in question for $520, drawn on the Exchange National Bank of Polo, Illinois, a village twenty miles east of Chadwick on the Chicago, Burlington & Quincy Railroad. It was payable to appellant or bearer. Jesse took it to the appellee bank, indorsed the name of his uncle on the back, and received therefor a certificate of deposit payable to the order of his uncle, and took it home and gave it to his uncle, and his uncle soon thereafter deposited it in the First National Bank of Mt. Carroll, and it was afterwards presented to and paid by appellee, on May 25.

Appellee received the check on Friday, May 21, 1909, between 2:30 and 3:00 o'clock in the afternoon. According to the proof, there was but one mail going east from Chad-

wick each day and that went about five o'clock P. M. on the
Chicago, Burlington & Quincy Railroad, and the mail was
closed about twenty minutes before five o'clock. Appellee
did not send the check away for collection that day, but at
five o'clock P. M. of Saturday, May 22, it sent the check
to the Corn Exchange National Bank of Chicago, its Chicago
correspondent. That bank received the check on the morn-
ing of Monday, May 24. There were in Polo two banks,
the Exchange National Bank, on which this check was
drawn, and Barber Brothers & Company of Polo. Between
five and six o'clock P. M. of Monday, May 24, the Corn Ex-
change Bank sent the check to Barber Brothers Bank, and
on Tuesday, May 25, the latter bank presented the check
for payment to the Exchange National Bank of Polo and
payment was refused. Barber Brothers Bank then placed the
check in the hands of a notary, who duly demanded payment,
protested it, and mailed notice thereof to each party in in-
terest. Appellant received the notice on May 26, and that
was the first knowledge or notice he had that Jesse did not
obtain the cash for the horses and that he took a check in-
stead. The horses by this time were beyond appellant's
reach. Appellant denies the authority of Jesse to take a
check for the horses and to indorse it in appellant's name,
and claims an estoppel against the appellee bank by reason
of what its officer said to him over the telephone before he
sent the horses to town that morning. He also contends that
there were many errors in the rulings of the court upon the
evidence and the instructions. We deem it necessary to
consider but one of the many questions raised.

Polo was twenty miles east of Chadwick, on the same
line of railway. Barber Brothers Bank was proved to be a
responsible institution. If appellee had remitted the check
to that bank on Friday, May 21, it would have reached Polo
about 5:30 P. M. and would have been received by Barber
Brothers Bank either that night or the first thing the next
morning, and would have been immediately presented for
payment. As the law was prior to the time when the Ne-
gotiable Instrument Law of 1907 went into effect, we think

it clear that the delay in sending the check from Chadwick and the sending of it by the circuitous route described, so that it did not reach Polo till the following Tuesday, would constitute such negligence as would release the indorser. Section 192 of that Act enacts that in determining what is a reasonable time, regard is to be had to the nature of the instrument, the usage of the business with respect. to such instrument, and the facts of the particular case. Appellee introduced evidence tending to show that it was the general usage among· banks not to send country checks to the town where they are payable, but to send them to the correspondent of the bank in some commercial center, and that, when appellee received the check drawn on a place between Chadwick and Chicago, it sent the check to the Corn Exchange Bank of Chicago, regardless of the fact that there was a reputable bank at the place where it was payable, and that the sole reason for doing this was to save expense, as exchange was frequently charged where the check was sent to another bank in the same town where it was payable. Counsel have argued at great length the question whether such a custom is within the meaning of section 192 of the Negotiable Instrument Law, and whether proof thereof could be received without pleading the custom. We deem it unnecessary to decide those questions. Appellee received this check about two thirty or three o'clock P. M. of Friday May 21, and not later than three o'clock. It was accustomed to close its bank at 4 or 4:30 P. M. It knew that the only mail east for twenty-six hours went about five o'clock P. M. and that it closed about twenty minutes before five o'clock. No reason is seen why, if appellee intended to send this check by this circuitous route, it was not required to send it by that mail. Appellee explains it in this way. Its officer testified that at their bank the checks for collection were made up from two to three o'clock and if their remittance of checks had already been made up and sent out before a check was received they would hold it till they made up a remittance again. He did not testify that this check was received after the remittance had been made up

nor that he had any recollection on the subject. It may be that it was done to accommodate Smith, who had been their customer for ten or twelve years, and to give him a little more time to meet the check. In our view of the case, if appellee designed to avail itself of this usage to send the check by a circuitous route, requiring several days to reach a point twenty miles away on a connecting railway, ordinary diligence required that it be sent out by the first mail. If there was any usage in appellee bank to hold a check back for twenty-six hours, that usage was neither known to appellant, nor binding on him. We are of opinion that, notwithstanding the Negotiable Instrument Act of 1907, this case is practically governed by Travers v. T. M. Sinclair & Co., 122 Ill. App. 203. Appellee lays some stress on the word "negotiation," as used in sections 71 and 30 of said Act. The officer of appellee testified that appellee sent this check to the Corn Exchange Bank for collection. A clerk of the Corn Exchange Bank testified that it received the check for collection; that, while it called it a cash item, yet it was only cash in case it was paid, and that the Corn Exchange Bank sent the check to Barber Brothers Bank for collection. We think it cannot be the meaning of the sections of the Act referred to that a check may be sent for collection in a roundabout way, through many banks, and that the reasonable time for its presentment begins after the last time it is sent on for collection.

No one proved whether, if the check had been presented within a reasonable time, the funds were there on hand with which to pay it. Such proof would be material if the suit were against the maker of the check, but it was decided in Travers v. T. M. Sinclair & Co., *supra,* that in America, the indorser is discharged by the omission to present the check within a reasonable time, irrespective of actual damage.

The judgment is therefore reversed.

*Reversed.*

Finding of facts, to be incorporated in the judgment: We find that appellee was guilty of negligence in not presenting the check to the bank upon which it was drawn

within a reasonable time after appellee received it; and that, if it had a right under the custom of banks to send the check for collection by way of Chicago, it did not send the check forward with due diligence; and that, by reason of the negligence of appellee, the appellant, the indorser of the check, is discharged.