Thomas H. Stevenson, Appellant, v. Sherburne M. Earling and Harold S. Cook, trading as S. M. Earling & Company, Appellees.

## Gen. No. 24,161.

1. SALES, § 364*—*what is right of election of remedies by purchaser where vendor abrogating contract sends checks for amount paid.* Damages accruing from the abrogation by the vendors of a contract for the purchase of corporate stock could not be adjusted and determined by the *ex parte* action of the vendors in sending to the purchaser certified checks for the amount paid on the contract, and the purchaser had the right, after notice of the abrogation, to determine whether he would accept the checks as the measure of his damages or elect to stand upon his contract.

2. PAYMENT, § 5*—*applicability of common-law rule as to by check.* The common-law rule that a check ordinarily does not constitute payment of an indebtedness unless it is accepted as such by the creditor is applicable in this State.

3. SALES, § 90*—*when actual receipt of notice of abrogation of contract by vendor necessary to bind purchaser.* Where a lawyer, employed in the offices of a law firm, contracted to purchase corporate stock and made a payment thereon, which contract was abrogated by the vendors, a notice thereof, with certified checks for the sum paid, mailed to him at such offices and delivered there during a prolonged absence on account of illness and placed in his desk by some one not in his employ, was not binding upon him until actually received upon his return.

4. PAYMENT, § 6*—*when receipt of checks and depositing in bank for collection does not constitute.* Where one, who had contracted for the purchase of corporate stock, upon receiving notice of abrogation of the contract with certified checks for the amount paid with interest, sent the checks to his bank for collection, *held* that while he thereby manifested an election to receive the checks as the measure of damages for breach of the contract, he did not agree to accept them as payment.

5. BANKS AND BANKING, § 123*—*when deemed that checks not delivered to payee until actually received.* One who had contracted for the purchase of corporate stock owed to the vendors no duty to have his mail looked after during his illness so that checks mailed to him, as a return of the money paid on the contract, upon its abroga-

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tion by them and delivered at his place of employment during such illness, cannot be deemed to have been delivered to him until he actually received them.

6. BANKS AND BANKING, § 130*—*when failure of payee to give notice to drawer of dishonor of check is not negligence.* A bank, upon whom certified checks were drawn, being insolvent and in the course of liquidation when the checks were delivered to the payee, no default, misconduct or negligence could be imputed to him for not going through the useless form of presenting them and giving notice of dishonor, as the drawer lost no rights by his failure to do so and the insolvent bank's liability was not changed thereby.

7. BANKS AND BANKING, § 131*—*what is effect of certification of checks.* The fact that the certification of checks operated as an assignment *pro tanto* of the drawer's account, did not prevent the payee from refusing to accept the assignment in his favor and the restoring of the drawer's right to a claim against the bank, which had become insolvent before the checks were received by the payee.

8. BANKS AND BANKING, § 130*—*when payee not estopped from denying receipt of checks before insolvency of bank.* In a suit on the common counts for money had and received, to which defendant pleaded payment by means of certified checks, which were mailed to plaintiff at his place of employment, plaintiff was not estopped from denying receipt of the checks until they actually came into his hands upon his return after a protracted illness, at which time the bank upon which they were drawn was insolvent and in the course of liquidation.

Appeal from the Superior Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1918. Reversed and judgment here with finding of fact. Opinion filed March 18, 1919.

**Statement by the Court.** The declaration is on the common counts for money had and received. Defendants filed the plea of general issue and a special plea of payment. On joinder of issues the case was tried without a jury and the court's finding and judgment were against plaintiff who has appealed.

The facts are undisputed and as follows: In 1913 and 1914, both plaintiff and defendants had offices in Chicago. Defendants were underwriting the sale of mortgage bonds of the Grand Rapids & Northwestern

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Railroad Company, on the basis that $1,000 of the bonds would carry $500 of the company's fully paid common capital stock. Plaintiff was a practicing lawyer and employed as an assistant attorney in the offices of a law firm to whose business he devoted practically his entire time, having very little business of his own. The stationery used in his private matters and his correspondence with defendants on the subject of the contract hereinafter referred to, gave his address at the offices of said firm.

In the year 1913 he entered into a subscription contract with defendants agreeing to pay them or the railroad company $5,000 in instalments whereby he would become entitled to a certain number of the railroad's mortgage bonds and accompanying stock as aforesaid on paying the last instalment. On April 8, 1914, he received a letter from defendants, mailed and addressed to his office, notifying him that the first instalment would be payable on April 15, 1914. On that date he sent defendants his check for $1,750 (which was in excess of the instalment due), and for which he received a receipt crediting such payment on his subscription account. The check was cashed April 17, 1914.

From May 28 to July 2, 1914, he was continuously absent from his office and confined to his house on account of illness. While he was so confined an intimate friend took it upon himself, without plaintiff's request, to go over to plaintiff's office about once a week and gather up the mail he found on his desk and take it to him. On plaintiff's return to the office July 2nd, he found in a drawer of his desk a package of mail (supposed to be one delivery), in which was a letter from defendants addressed to him at his office dated June 1, 1914, and reading as follows:

"Owing to the inability of the Executive Committee of the Grand Rapids & Northwestern Railroad to definitely approve and ratify the construction contracts,

etc., by June 1, 1914, your first instalment is herewith returned to you, accompanied by our check with interest at five per cent.

"The Board of Directors expect to have a meeting in the near future to determine what future action should be taken with reference to the project.

Very truly yours,

S. M. EARLING & COMPANY."

The letter contained two certified checks of the same date payable to his order and drawn on the La Salle Street Trust & Savings Bank, one for $1,750 and the other for accrued interest thereon. The bank on which they were drawn became insolvent on June 12, 1914, up to which time it was honoring checks drawn thereon, and after which it remained insolvent and in the hands of a receiver. Plaintiff indorsed the checks and sent a messenger to his bank to deposit them, and because of the insolvency of the bank on which they were drawn his bank did not accept them for deposit. When the messenger returned with them plaintiff observed for the first time that they were drawn on the insolvent bank. On July 7th he wrote defendants advising them that on account of his illness he did not get their letter containing the checks until July 2nd, and a few days later had a personal interview with one of defendants' firm respecting their liability, and offered to return the checks. Defendants did not answer his letters, refused to receive the checks and disclaimed liability.

Plaintiff always stood ready to perform his part of the contract, and had no notice of its abrogation until he read said letter on July 2nd. The contract contained no provision implying a right to abrogate it or that would lead plaintiff reasonably to expect or anticipate such abrogation or a return of his money.

It was not shown when or how the letter containing the checks was placed in the drawer of plaintiff's desk, but he testified that he supposed it was put there by the firm's office boy, and it was presumably left at the

office by the mail carrier in the due course of mail about June 2nd. Plaintiff had no employees in the office but occasionally made use of the firm's.

FREDERICK Z. MARX and THOMAS H. STEVENSON, *pro se,* for appellant.

WILLARD C. McNITT and JOSEPH A. BATES, for appellees.

MR. JUSTICE BARNES delivered the opinion of the court.

The question is whether under the foregoing facts and circumstances the checks constituted payment of the indebtedness so incurred.

It is appellees' and was the trial court's theory, that under the foregoing circumstances there was a constructive delivery of the checks to plaintiff when they were received at his office, and that he was chargeable with the duty of presenting them for payment with reasonable diligence after such delivery, and, therefore, with any loss consequent upon the neglect so to present them. Citing the Negotiable Instruments Act governing checks, appellees argue that the certification of the checks operated under sections 186 and 188 (J. & A. ¶¶ 7826, 7828), as a *pro tanto* assignment of their deposit in said bank, that the transfer of their possession of the checks by mailing them to plaintiff's office constituted delivery of them within the meaning of section 190 (J. & A. ¶ 7830), and that by sections 181 and 185 (J. & A. ¶¶ 7821, 7825), they were discharged to the extent of any loss on the checks by plaintiff's delay to present them and give notice of dishonor.

Whatever application these provisions of the statute might have, had the checks been sent to pay a previously recognized indebtedness, we need not inquire. The important fact is that the indebtedness was created without plaintiff's knowledge, expectation or consent. It is clear that the damages ensuing from the

abrogation of the contract being unliquidated, they could not be adjusted and determined by the *ex parte* action of defendants. Plaintiff had the right to determine whether he would accept the amount of the checks as the measure of his damages or elect to stand upon his contract, and not until he received notice of the conditions out of which the right arose could there be occasion for its exercise. He received neither actual nor constructive notice until July 2nd. Not before then did he owe defendants any duty with respect to his contract or the checks. While he then manifested an election to receive the checks as the measure of his damages, he did not agree to accept them as payment, and no authorities need be cited in support of the familiar common-law rule, applicable in this State, that a check ordinarily does not constitute payment of an indebtedness unless it is accepted as such by the creditor. (30 Cyc. 1181, 1194.)

In its final analysis appellees' argument seems to be that plaintiff was estopped by reason of some form of negligence from denying the claim of payment,—negligence either in making no provision for prompt attention to his mail, or in not presenting the checks and giving notice of dishonor after they actually came into his hands.

Unless he owed them some special duty to have his mail looked after in his absence, there was no negligence for his inattention thereto. As above shown, his contractual relations with defendants raised no such duty before he received actual notice of the abrogation of the contract, and we fail to see in the circumstances anything upon which such a duty can be predicated. If not, then the checks cannot be deemed to have been delivered to him until he actually received them.

And we fail to see any ground for imputing negligence after the checks were so delivered and received. The bank then being insolvent and in the course of liquidation, no default, misconduct or negligence could

be imputed to him for not going through the useless form of presenting them and giving notice of dishonor. Defendants lost no right from a failure so to do. Nor was the insolvent bank's liability thereon changed. The fact that the certification of the checks operated as a *pro tanto* assignment of defendants' account did not prevent plaintiff from refusing to accept the assignment in his favor and the restoring of defendants' right to a claim against the insolvent bank.

The circumstances of the case are unusual, if not novel, but so different from those of cases cited by appellees that we need not refer to such cases merely to point out distinguishing features. Somewhat similar, however, is the case of *Union Biscuit Co. v. Springfield Grocer Co.*, cited by appellants and reported in 143 Mo. App. 300, 126 S. W. 996. That was a suit on an open account. The defendant pleaded payment and offered in proof thereof a bank draft indorsed to the plaintiff and mailed to its office, where the letter containing it was wrongfully opened and the draft abstracted by one of plaintiff's employees who had access to its mail and substituted his name for plaintiff's on the draft and cashed it as and for his own. The court held not only that there could be no payment under the common-law rule by the taking of the check or draft without an express agreement to take it as payment, but that plaintiff was not estopped by the facts to deny a receipt of the draft.

So in the case at bar, we think the defense of payment was not sustained, and that plaintiff was not estopped from denying receipt of the checks until they actually came into his hands, assuming that the record is such that the doctrine of estoppel may be invoked. The judgment, therefore, must be reversed and one entered here for $1,750 with interest at 5 per cent from April 17, 1914, the date plaintiff paid his instalment under the contract, making the sum of $2,185.

*Reversed with judgment here and finding of fact.*

Finding of fact. We find that the checks dated June

1, 1914, sent by appellees Sherburne M. Earling and Harold S. Cook to appellant Thomas H. Stevenson were not accepted by him as payment of the indebtedness sued on and did not constitute payment thereof in whole or in part, and that there is now due from appellees to appellant the sum of $2,185.