MARS, INC., Respondent, vs. CHUBRILO, Appellant.

*October 11—November 6, 1934.*

314

*Val. W. Dittmann* of Kenosha, for the appellant.

For the respondent there was a brief by *Kadwit & Lepp* of Kenosha, and oral argument by *H. J. Kadwit*.

FRITZ, J.  The defendant contends that the court erred in finding that a check issued by defendant to plaintiff in payment of indebtedness to plaintiff was presented for pay-

ment within a reasonable time after its issuance, in compliance with sec. 118.62, Stats., which provides:

"A check must be presented for payment within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay."

The evidence established the following facts: On November 7, 1932, defendant sent his check for $319.87, drawn on the United States National Bank & Trust Co. at Kenosha, Wisconsin, to plaintiff's office in Chicago, Illinois, where it was received by plaintiff on November 8, 1932. That day was a national holiday and all the banks were closed. On November 9, 1932, plaintiff, instead of depositing the check at Chicago, to have it forwarded directly to Kenosha for presentation, sent it by air-mail to its depository bank in Minneapolis, Minnesota. That bank received the check on November 10, 1932, and forwarded it on that day to the Federal Reserve Bank at Chicago. As November 11, 1932, was also a legal holiday, and the banks were closed, the check was not forwarded from Chicago to Kenosha until November 12, 1932, and it was not presented to the drawee at Kenosha until the next business day after Saturday, November 12, 1932. As the defendant had sufficient funds on deposit, and the drawee honored all checks presented on November 12, 1932, it would have been paid if presented on that day. But as it was not presented and as the bank was closed on November 13, 1932, by an order of the federal comptroller of currency, the check was not paid.

It is obvious that presentment to the drawee was delayed by plaintiff to the extent of at least one business day beyond the time reasonably required if the check had been deposited, in the first instance, at a bank in Chicago, and forwarded from there directly to Kenosha instead of being first sent by plaintiff to Minneapolis for deposit there, and then being

returned to Chicago to be again forwarded from there through the Federal Reserve Bank to its correspondent at Kenosha for presentation to the drawee. However, plaintiff contends that notwithstanding that delay there was no failure to make presentment within a reasonable time because of proof to the effect that since December, 1930, plaintiff, to facilitate the cashing of checks, as it thought best, cleared all checks which it received in Chicago and which were drawn on banks in Wisconsin, northern Illinois, and Minnesota, through its depository bank at Minneapolis; that it was the practice of most concerns in Chicago, having a great volume, to clear checks all over the United States in different depository banks, because the clearing house at Chicago makes quite a charge on checks deposited there; and that up to November 7, 1930, twenty checks, which had been sent to plaintiff by defendant and which were drawn on the bank at Kenosha, had, as appeared from indorsements thereon, been forwarded by plaintiff to its depository at Minneapolis and had been sent through the Minneapolis clearing house to the Federal Reserve Bank at Chicago for presentation to the drawee bank at Kenosha, where they were paid and returned to the defendant as honored. In the latter connection, it appeared, however, that the defendant had never been informed that his checks were accepted by plaintiff only to be cleared through the Minneapolis bank. It was, apparently, upon that evidence that the court found that, "taking into consideration the nature of the instrument and the usage of the trade and business in which the plaintiff was engaged and the custom of the trade and business houses in the city of Chicago, Illinois, in clearing checks," it was within the contemplation of the parties to the transaction that the check in question would be cleared through the bank at Minneapolis; that it was presented for payment, with reasonable diligence and promptitude, within a reasonable time after its issuance; and that plaintiff was not negligent in handling that check.

It is of controlling significance that it appears as to all checks in evidence, which were honored by the drawee at Kenosha, that the presentment and collection thereof were made ultimately through the bank at Chicago forwarding them directly to Kenosha for those purposes. Consequently, by first depositing the check in suit at Minneapolis, instead of at Chicago, because of which it could not be sent, in the first instance, directly from Chicago to Kenosha, the plaintiff adopted a needlessly circuitous route, which resulted in the delay that ultimately prevented the payment of the check. Although plaintiff, and other concerns at Chicago, may, as a matter of economy, have indulged in the practice of clearing checks through depository banks located elsewhere than in Chicago, in so far as that practice resulted inevitably in a failure to comply with the statutory requirement that "a check must be presented for payment within a reasonable time after its issue," in order to avoid the discharge of the drawer from liability, it affords no protection to the plaintiff in its disregard of the rights of the defendant, whom it had not informed of that practice and who had not consented thereto. As far as he was concerned, compliance with the provision in sec. 118.62, Stats., as to presentation within a reasonable time, required the check, under the circumstances of this case, to be forwarded on the next business day after the first business day on which it came into plaintiff's possession, directly from Chicago to Kenosha for presentation to the drawee, at the latest, before the close of business upon the day following its receipt at Kenosha. *Aebi v. Bank of Evansville,* 124 Wis. 73, 77, 102 N. W. 329; *Gifford v. Hardell,* 88 Wis. 538, 541, 60 N. W. 1064; *Lloyd v. Osborne,* 92 Wis. 93, 65 N. W. 859. As is said in Brady, Bank Checks (2d ed.), p. 140, § 89:

"It is improper to send a check over a circuitous route and the forwarding of a check in such manner will have the effect of discharging the drawer where the check is not paid upon presentment, if it appears that the check would have been paid if forwarded in a more direct manner."

See also a note in 91 A. L. R. 1204; *Northern Lumber Co. v. Clausen,* 201 Iowa, 701, 208 N. W. 72; *Plover Savings Bank v. Moodie,* 135 Iowa, 685, 110 N. W. 29, 113 N. W. 476; *Seager v. Dauphinee* (Mass.), 187 N. E. 94; *Woods Bros. Corp. v. Francke,* 122 Neb. 672, 241 N. W. 88; *First Nat. Bank of Chadwick v. Mackey,* 157 Ill. App. 408; *Republic Metalware Co. v. Smith,* 218 Ill. App. 130.

Although, ordinarily, "what constitutes a reasonable time for presentation is a question of fact" (*Coolidge v. Rueth,* 209 Wis. 458, 245 N. W. 186), as it is undisputable that the route by which the check was ultimately sent for presentation, from Chicago directly to Kenosha, could as readily have been resorted to, in the first instance, to make timely presentment, the question is one of law; and the trial court's conclusion that the check was presented within a reasonable time, is not entitled to the effect which would otherwise be accorded to a finding on a fact which is in dispute. Furthermore, as the court erred in holding that the check was presented within a reasonable time, its conclusions, in connection therewith, that no part of the indebtedness, which was to be paid by the check, has been paid, and that plaintiff is entitled to recover the full amount thereof, are also unwarranted.

It is well established that, in the absence of an agreement that a check was taken as an absolute payment, it "is regarded as a conditional payment only, which becomes absolute upon the payment of the check," Brady, Bank Checks (2d ed.), p. 21, § 11; *Olcott v. Rathbone,* 5 Wend. (N. Y.) 490; *Burkhalter v. Second Nat. Bank,* 42 N. Y. 538; *Carroll v. Sweet,* 128 N. Y. 19, 27 N. E. 763, 13 L. R. A. 43; *Smith v. Mills,* 112 Oreg. 496, 230 Pac. 350; *Cogar Grain & Coal Co. v. McGee,* 241 Ky. 485, 44 S. W. (2d) 551; *Breckinridge County v. Gannaway,* 243 Ky. 49, 47 S. W. (2d) 934; *Alexiou v. Bridgeport-People's Savings Bank,* 110 Conn.

397, 148 Atl. 374; *Inter State Nat. Bank v. Ringo,* 72 Kan. 116, 83 Pac. 119; *National City Co. v. City of Athens,* 38 Ga. App. 491, 144 S. E. 336; *Glenn v. City of Birmingham,* 223 Ala. 501, 137 So. 292; *Ross v. State Life Ins. Co.* 225 Ala. 410, 142 So. 827; *People's Finance & Thrift Co. v. Matthews Fruit Co.* 104 Cal. App. 630, 286 Pac. 710; *Henry v. Conley,* 48 Ark. 267, 3 S. W. 181; *Stevenson v. Earling,* 213 Ill. App. 395; and that, if the drawee of a check refuses to pay it, the holder may sue the drawer either on the check or recover the debt evidenced by the check. 8 C. J. p. 807, § 1069. However, in that connection, there is the qualification that if the check would have been paid, if it had been presented within a reasonable time, then a failure in that respect operates to discharge the maker to the extent of any loss resulting to him from the creditor's negligence, where it appears that he has suffered a loss as a result of the delay. As was said in *Carroll v. Sweet, supra,* page 24:

"To the extent of the injury, the law would treat the omission to make due presentment as tantamount to payment."

*Republic Metalware Co. v. Smith,* 218 Ill. App. 130, 133; *Brown v. Schintz,* 202 Ill. 509, 514, 67 N. E. 172; *Marx & Co. v. Bankers' Credit Life Ins. Co.* 224 Ala. 249, 139 So. 421; Brady, Bank Checks (2d ed.), p. 145, § 92; p. 24, § 11. That is in accord with sec. 118.62, Stats., in so far as it expressly limits the extent of the discharge of the drawer from liability to "the extent of the loss caused by the delay."

In actions by the payee against the maker to recover on the check, or on the original debt which was to be paid by the check, it has been generally held that the burden of proof is on the maker to show that loss was sustained by him as a result of delay in presenting the check. *McDaniel v. Mackey,* 40 Ga. App. 517, 150 S. E. 439; *Sims v. Hunter,* 44 Idaho, 505, 258 Pac. 550; *Rosenbaum v. Hazard,* 233 Pa. 206, 82 Atl. 62; *Farmers' Oil & Gas Co. v. Betts,* 50 S. D. 78, 208

N. W. 402; *German-American Bank v. Wright,* 85 Wash. 460, 148 Pac. 769, Ann. Cas. 1917D, 381; *Cox v. Citizens' State Bank,* 73 Kan. 789, 85 Pac. 762; *Ryckman v. Fox Film Corp.* 188 Cal. 271, 205 Pac. 431; *Spink & Keyes Drug Co. v. Ryan Drug Co.* 72 Minn. 178, 75 N. W. 18; *Dehoust v. Lewis,* 128 App. Div. 131, 112 N. Y. Supp. 559; *McEwen Bros. v. Cobb,* 104 Misc. 477, 172 N. Y. Supp. 44; and *Morris-Miller Co. v. Von Pressentin,* 63 Wash. 74, 114 Pac. 912, in which the maker claimed that loss resulted to him from the negligence of the payee in failing to give prompt notice of dishonor of the check. *Contra,* see *Watt v. Gans,* 114 Ala. 264, 21 So. 1011; *Arnold v. Mangan,* 89 Ill. App. 327; *Nelson v. Kastle,* 105 Mo. App. 187, 79 S. W. 730.

All of those propositions are involved in this action because, although the defendant may have sustained some loss by reason of plaintiff's delay in presenting the check, it appears conclusively that he has not lost the entire amount of the check. It is undisputed that he filed a verified claim with the receiver of the bank for the sum of $409.14, which he had on deposit when the bank closed; that the sum on deposit includes the $319.87 which would have been paid to plaintiff on the check in suit; and that on account of that latter sum of $319.87 he has been paid and has accepted $31.98, as a ten per cent dividend. Whether there will or will not be any further dividend does not appear, but as it is manifest that plaintiff's delay has not caused a loss to defendant of the entire amount of the check, that delay does not operate to discharge him from liability to plaintiff for the entire amount of the debt or of the unhonored check, which constituted but a conditional payment thereof. That unhonored check constitutes, in legal effect, but a payment *pro tanto,* to the extent of the actual loss which defendant will sustain, but under the present state of the record it is impossible to determine

the probable amount thereof. That issue was not litigated in view of the trial court's conclusion that there had been no failure on plaintiff's part which occasioned any loss to defendant. Under the circumstances, in connection with reversing the judgment, for the reasons stated above, the cause must be remanded with directions for a new trial to determine the amount of defendant's loss, and the corresponding extent to which he is entitled, by reason of his loss, to have the check in suit applied in payment of the debt owing to plaintiff, and on account of which the latter is entitled to recover only the balance found to be owing after applying that payment. The ultimate result will be that the amount of plaintiff's recovery will be limited to the amount which will be paid to defendant on account of the claim filed by him with the receiver on account of the $319.87, which were on deposit to honor the check.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with the opinion.