## American National Insurance Company v. Brown.

(Decided March 12, 1918.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

1. Insurance—Life Insurance—Rebating—Does Not Affect Validity of Policy or Premium Note.—A rebating arrangement in violation of section 656 of the Kentucky Statutes between a soliciting agent and an applicant for insurance, by which the applicant procures insurance for a less premium than the established rate, will not affect the validity of the policy or the note executed for part of the premium.

2. Insurance—Life Insurance—Premiums—Payment of by Note.— Although a contract of insurance may stipulate that premiums shall be paid in cash, the acceptance of a note by the agent for the amount of the premium will answer the requirements of the contract.

3. Insurance—Life Insurance—Construction of Contract—Change in Physical Condition of Insured.—Where the application provided that "any policy issued hereon shall not take effect until the first premium has been paid during my insurability," a change in the physical condition of the insured between the date of the application and the delivery of the policy, did not affect the validity of the policy.

4. Insurance—Life Insurance—Estoppel to Rely on Change in Physical Condition of Insured Between Date of Application and Delivery of Policy.—Where an agent, before delivering the policy, was informed by the insured of an accident that happened to him after he had applied for insurance, and with this information the agent delivered the policy, the company was estopped to rely on the changed physical condition of the insured as a defense to a suit on the policy.

5. Insurance—Life Insurance—Estoppel to Rely on Change in Physical Condition of Insured Between Date of Application and Delivery of Policy.—When an insurance company, before it delivers a policy, or during the life of an insured, comes into the possession of information that would put it on notice of a change in the condition of the insured, which if it had known of, the contract would not have been accepted, or if accepted, would have been cancelled, it must, if the information is received before the policy is delivered, refuse to deliver it, or if delivered, must within a reasonable time after receiving the information cancel the contract, and failing to do either of these things, it will be estopped after the death of the insured to contest the policy.

6. Evidence—Conversation with Decedent.—In a suit by the beneficiary of a policy against the company to recover the insurance, the agent of the insurance company who secured the policy may testify for the benefit of the estate as to conversations with the insured at the time the application was taken.

TYLER BARNETT and DODD &· DODD for appellant.

GROVER G. SALE and SELLIGMAN & SELLIGMAN for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On August 18, 1915, Charles A. Brown, who at the time lived in Louisville and was a traveling salesman in the employ of J. B. Speed & Co., was in Paducah on business connected with his firm, and while there was induced by G. C. Bohon, a soliciting agent of the appellant insurance company, to take out a five thousand dollar policy upon his life for the benefit of his widow, Lula II. Brown, the appellee.

The first premium on the policy was $165.05, and on the date of the application Brown, in payment of this premium, gave to Bohon his check for twenty dollars and executed his note for $145.05, payable to the insurance company one year after date.

On August 28, 1915, Brown, while at Covington, Tenn., walking on the street, was seized with an attack, the nature of which is not clearly shown, and from the effects of which he fell upon the sidewalk and received severe

injuries about his face that required medical attention and kept him in Covington for a few days, after which he returned to his home in Louisville.

In the meantime the application of Brown, together with the medical examination made at the time of the application, had been forwarded by Bohon to the company at its home office in Galveston, Tex., and on September 8, 1915, the policy, in accordance with the application, was issued by the company and forwarded by it to its agent, Bohon, who a few days thereafter delivered it to Brown.

Brown died in June, 1916, from causes that are not disclosed in the record, and, thereafter, the company refusing to pay the insurance, this suit was brought by the beneficiary, Mrs. Brown, with the result that there was a judgment in her behalf for the full amount of the insurance, less the amount of the note for $145.05 that had been executed, as stated, in part payment of the premium but had not been paid.

On this appeal by the insurance company we will for convenience here set forth the pertinent stipulations in the policy and application before discussing the grounds relied on for reversal.

In the application Brown agreed "that any policy issued hereon shall not take effect until the first premium has been paid during my insurability," and in the policy contract, of which the application was a part, it was stipulated that "the consideration for this policy is the application herefor, which is a part of this contract, and a copy of which contract is attached hereto or endorsed hereon, and the payment in advance of an annual premium of $165.05 for term insurance for the year ending on the 8th day of September, 1916." There was a further stipulation that "any indebtedness to the company hereon will be deducted in any settlement hereunder upon the death of the insured . . . ."

The company on this appeal insists: (1) that the payment of the first premium was a condition precedent to the policy becoming effective, and as the first premium had not been paid, the policy was void: (2) that Bohon, the agent of the company, in soliciting the application of Brown, and Brown in consenting to make the application, were guilty of rebating in respect to the premium, in violation of law, and consequently the contract was void from the beginning; (3) that as the application was

not accepted or the policy issued until after the date of the attack suffered by Brown at Covington, Tenn., Brown was under a duty to have given the company full information of the nature of this attack, and if he had done so it would not have issued or delivered to him the policy, or having delivered would have cancelled it.

Other grounds are relied on, but we think the case may be disposed of upon a consideration of the ones we have mentioned.

In considering the defense that the application was made and the policy contract issued pursuant to an agreement or arrangement between Bohon, the agent, and Brown, the insured, in violation of law, and so the contract was an illegal transaction and void from the beginning, it will aid in understanding the issue to state clearly the evidence of the agent, Bohon, who was the only witness who testified concerning this matter.

Bohon testified that he solicited Brown to take the insurance and that after Brown agreed to do so, he was submitted to an examination by the local medical examiner of the company, and after his examination was made on August 18, 1915, Brown gave him a check for twenty dollars, which was paid, and a note for $145.05, payable on or before August 18, 1916; that the note and the check were delivered to him by Brown at the same time; that the note was delivered by him to L. G. Borschneck, the general agent of the company; that the check for twenty dollars and the note for $145.05 constituted the full amount of the premium on the policy for one year, the note being accepted in part payment of the premium; that he forwarded the application to the company's home office and received from it the policy which, upon receiving, he mailed to Brown; that when he solicited Brown to take the insurance he told him he would take twenty dollars in cash and a note for the balance of the premium, and further told him that he did not think he would have to pay the note, but that if he died before the end of the year the amount of the note would be deducted from the insurance; that under his contract with the general agent he was to have all of the first premium except ten or twelve dollars as commission, and if Brown died before the year was out, the amount of the note would be deducted from the amount of the insurance, if it was paid, and he would be entitled to the amount of the note; that at the time he mailed the policy

to Brown he knew of the attack Brown had suffered at Covington, Tenn., as Brown told him that he had stumbled over a step on the sidewalk and fallen and knocked out several of his teeth; that he did not know that he had fallen as a result of an attack of epilepsy, but that if he had known that he had had an epileptic attack or fallen as the result of a fainting spell, he would not have delivered the policy to him.

It thus appears that the insurance company out of this first premium was entitled to only a few dollars and that was paid out of the twenty dollars paid in cash. And it further appears that under the arrangement between Brown and Bohon, Brown was really getting the insurance for a cash premium of twenty dollars, unless he should die within the year; and so it may be said that this arrangement, at least so far as Bohon was concerned, was rebating within the meaning of section 656 of the Kentucky Statutes, and subjected Bohon to the penalties therein provided. So much of this section as is pertinent reads as follows:

"No life insurance company doing business in Kentucky shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and equal expectation of life in the amount or payment of premiums or rates charged for the policies of life or endowment insurance, or in the dividends or other benefit payable thereon, or in any other of the terms and conditions of the contracts it makes; . . . . nor shall any such company or agent pay or allow, or offer to pay or allow, as inducement to insurance, any rebate of premium payable on the policy, or any special favor or advantage in the dividends or other benefit to accrue thereon, or any valuable consideration or inducement whatever not specified in the policy contract of insurance. Every company, or officer or agent thereof, who shall violate the provisions of this section, shall be fined in any sum not exceeding five hundred dollars, to be recovered by action in the name of the Commonwealth, and on collection, paid into the State Treasury."

In support of the argument that the rebating feature of this arrangement invalidated the policy, counsel for the insurance company rely upon the case of National Lifs Ins. Co. v. Anderson, 122 Ky. 794, but that case, which has no pertinency here, grew out of a controversy between the insurance company and its agent, Anderson,

and in the course of the opinion the court said that as between them any contracts in which it appeared that rebating was done in violation of the statute could not be enforced for the benefit of either of the parties.

But here the controversy is not between the insurance company and its agent who was guilty of rebating, but between the insurance company and an insured who was induced to take out insurance by an agent who was himself guilty of rebating. And so the precise question is, did the unlawful conduct of the insurance company's soliciting agent, although consented to by Brown, render the contract of insurance void? We think not.

It is true that Bohon, the soliciting agent, did practice rebating in the solicitation of the insurance, but after this verbal rebating arrangement had been entered into between him and Brown, the contract of insurance, which consisted of the application and the policy contract, was consummated by the issual and delivery of the policy and this written contract between the insurance company and Brown was fair on its face, showed no violation of the statute or that any vice existed in the contract, and by the terms of this written contract the insurance company, as well as Brown, was bound.

The note was made payable to the insurance company, was delivered by Bohon, its soliciting agent, to the general agent of the company, and therefore it may be said was accepted by the company in part payment of the first annual premium, in consideration of which the insurance policy was issued. Under these circumstances Brown, if he had lived, could not have defeated a suit by the insurance company upon the note on the ground that the agent, Bohon, agreed with him before its execution that he need not pay it.

Insurance companies are engaged in a public business, and upon grounds of public policy insurance contracts that may, in preliminary, verbal arrangements between the soliciting agent and the insured, have been tainted with the vice of rebating, should when fully executed and reduced to writing be held valid as between the insured and the insurance company, neither of them being allowed to defeat the contract in any part upon the ground that it was secured in the manner stated, in violation of the statute: Laun v. Pacific Mutual Life Ins. Co., 131 Wis. 555, 9 L. R. A. (N. S.) 1204; Quigg v. Coffy, 18 R. I. 757; Rideout v. Mars, 99 Miss. 199; The Security Life &

Annuity Co. v. Costner, 149 N. C. 293; Interstate Life Assurance Co. v. Dalton, 165 Fed. 176, 23 L. R. A. (N. S.) 772.

Nor is this rule in conflict with the principle laid down in Oliver v. Louisville Realty Co., 156 Ky. 628, in which we held that a contract entered into in this State by a foreign corporation that had not complied with section 571 of the Kentucky Statutes could not be enforced by it. In that case the prohibition and penalty of the statute was aimed at corporations doing business in this state without having observed the requirements of the statute and was intended for the protection of members of the public who might have dealings with such corporations; while the statute here in question was intended for the protection of the insuring public, and this purpose would often be defeated if rebating contracts destroyed the validity of policies issued under such contracts, because many persons who want and get insurance do not know or consider that there is any impropriety or illegality in the agent's giving to them any part of his commission that he sees proper to donate, and it would work a great wrong if after the death of such an insured person the company should be allowed to defeat the collection of the insurance money by the defense that the agent and the insured were guilty of rebating in violation of the statute.

The statute provides a punishment for the insurance company and the agent who is guilty of rebating, but does not prescribe any penalty against the insured who may accept a rebating proposition submitted by the agent and the policy pursuant thereto. When, therefore, the insured will not be permitted to derive any benefit or advantage from the rebating scheme, but will be required to pay the full amount of the premium, and the agent or company guilty of the rebating be punished under the statute, while the validity of the policy will be upheld, the purpose of the law will be carried out and the ends of justice subserved.

And so we think there may well be applied to transactions like this the principle announced by the Supreme Court of the United States in Texas Pacific Ry. Co. v. Mugg & Dryden, 202 U. S. 242, 50 L. ed. 1011. In that case Mugg & Dryden contracted with the railway company to ship certain freight for a specified sum, which was less than its published rates filed with and approved by the

Interstate Commerce Commission. The railway company required Mugg & Dryden to pay the rate they should have paid, and afterwards they brought suit against the company to recover the difference between the rate they contracted with an agent of the railway company to pay and the rate they were required to pay; but the court denied their right to recover upon the ground that no arrangement between the shipper and the agent by which the shipper obtained an advantage or preference over other shippers could interfere with the right of the railway company to collect its lawful and uniform charges. The same rule was announced by this court in C. & O. Ry. Co.. v. Maysville Brick Co., 132 Ky. 643; C. & O. Ry. v. Morton, 143 Ky. 201; L. & N. R. R. Co. v. Allen, 152 Ky. 145; L. & N. R. R. Co. v. Coquillard Wagon Works' Assignees, 147 Ky. 530.

Further supporting the views we have expressed is the case of Commonwealth Life Ins. Co. v. Bowling, 114 S. W. 327. In that case the insurance company delivered to Bowling a policy of insurance for five thousand dollars, for which it received from him the full annual premium of $277.85. After this Bowling instituted an action to recover the premium on the ground that, as the arrangement by which he secured the insurance amounted to rebating under the statute, the policy was void and he was entitled to recover the premium he had paid. But the court, in holding that the rebating arrangement did not affect the validity of the policy or note, said:

"The only question necessary to be determined is whether the policy issued by appellant to appellee for five thousand dollars was binding upon and enforceable against appellant in the event appellee had died within the twelve months for which the premium was paid. The policy which was issued to appellee was in the usual form, and if appellee had died within the year for which the premium was paid, and appellant had been sued for the amount of the policy by the beneficiary, it would not have been permitted to defend and defeat the recovery on the policy by setting up this separate contract, even though it was illegal, for the reason that the policy contract was executed."

Treating for the reasons stated the policy contract and note as valid, the next question is, was the premium paid in advance within the meaning of the contract? There is no requirement in the application or policy con-

tract that premiums should be paid in cash. The only condition is that the premium must be paid annually in advance, and under this contract we see no reason why the execution of a note by the insured for part or indeed the whole of the premium should not be treated as a payment of the premium within the meaning of the policy. The note executed for part of the premium was, as we have seen, made payable to the insurance company and was delivered to and accepted by its agent, who presumably had authority to accept the note in part payment of the premium. Plainly, to permit an insurance company to defeat the collection of the insurance upon the ground that a note taken by its agent was not to be regarded as payment of the premium, would be to enable it to practice a fraud upon an insured who believed that the acceptance of the note was a satisfactory compliance with the requirements that the annual premium should be paid in advance.

We have gone much farther than this by holding that the acceptance of a note in part payment of the premium will satisfy the condition in the contract that the premium must be paid in advance and in cash. This was determined in New York Life Ins. Co. v. Evans, 136 Ky. 391. In that case the court said: "A number of cases have come before this court involving forfeiture features of insurance policies similar in many respects to this one. In those cases, as here, the insured had executed premium notes, in lieu of paying the premiums in cash. The standard form of life policies provides for the payment of premiums in cash in advance as condition precedent to the continuation of the contract. Yet in each instance notes, conditioned as the one at bar, had been accepted by the insurers in lieu of the cash payments. It was once thought, and sometimes held, that the notes did not waive the stipulation for cash payment—that the insured carried the risk of dying uninsured until the premium note was paid in cash. That view was early abandoned. It is now universally held that the acceptance by the insurer of the note is a waiver of the policy provision for cash payment of the particular premium in advance."

The other defense relates to the effect on the contract of the attack Brown suffered on August 28th after his medical examination and application for the insurance but before his application had been accepted by the company. The company did not then or now find any fault

with the application, because it accepted it in the due and ordinary course of its business and issued the policy in conformity with it. But before the policy was actually issued on September 8th by the insurance company Brown had the attack mentioned, and it is now claimed that Brown was under a duty to have fully advised the company of the nature of this attack, and that if it had been so advised it would not have issued to him the policy of insurance.

At this point it will be convenient to again set forth the stipulation in the application that "any policy issued hereon shall not take effect until the first premium has been paid during my insurability," and this is the only clause in the contract upon which the company now relies to defeat the suit to recover the insurance because it was not fully informed of the nature of the attack suffered by Brown before it issued and delivered to him the policy contract.

It will be observed that the stipulation we have quoted merely declares that any policy issued shall not take effect until the first premium has been paid during the insurability of the applicant, and we have already determined that the first premium was paid within the meaning of the policy when the application was made, and consequently paid at a time when there could be no doubt about the insurability of Brown. His lack of insurability did not arise, if at all, until after the first premium had been paid, and so unless the clause mentioned is to be considered as a continuing representation that Brown would continue to remain in good health until the policy was issued and delivered, his illness subsequent to the payment of the premium should not be allowed to affect the validity of the policy.

According to its reading, the only condition that would defeat a policy issued on the application would be the failure of the applicant to pay the premium. If he paid the premium and his application was accepted, then according to the terms of the application the policy issued could not be affected by his lack of insurability subsequent to the date of the application.

But in behalf of the insurance company the argument is made that the representations as to the good health of Brown, contained in his application and shown in the medical examination, were continuing representations until the acceptance of the application and that if there

was any material change in the physical condition of the applicant before the acceptance of the application, or if there was such change as would probably have caused the company to reject the application if it had known of the same, it was the duty of Brown to have advised the company of such change, and that his failure so to do was such concealment as would avoid the policy. In other words, the argument is that when and at the time it issued the policy the company had the right to assume that the applicant was in the same physical condition that he was when he applied for the insurance, and that as his physical condition had changed between the date of the application and the date of its acceptance and the issual of the policy, of which change the company had, as claimed, no notice, the contract was not enforcible, because it would not have been consummated by the issual of the policy if the condition of the applicant had been made known. In support of this our attention is directed to the cases of Metropolitan Life Ins. Co. v. Moore, 117 Ky. 651; Western & Southern Life Ins. Co. v. Davis, 141 Ky. 358, and Modern Woodmen of America v. Atkinson, 153 Ky. 527.

But these cases throw no light upon the subject under investigation, nor do they support the argument of counsel. In these cases, it appears that the policy provided that "no obligation is assumed by this company upon this policy until the first premium has been paid and the policy duly delivered, nor unless upon the date of the delivery the insured is alive and in sound health." If the contract we are considering had contained the provision found in the policies in those cases, it is very clear that the company in this case, unless estopped so to do, might have set up as a defense the changed condition in the health of Brown, if any, between the date of the application and the date of the delivery of the policy to him.

But the policy in this case does not contain such a provision or any provision indicating that a change in the condition of Brown's health between the date of the application and the date of the delivery of the policy would affect his right to the amount of the policy, if the first premium was paid during his insurability, and in this respect it differs in a material way from all the standard policies that have come under our notice.

The application and policy contained the whole contract between the parties, and it would reasonably appear

that the company should not be allowed to defeat the agreements it had entered into unless the insured committed some breach of the contract, or failed to perform some material condition imposed upon him by the stipulations of the contract, or the contract contained some provision that in view of the attack sustained by Brown, would defeat the right to recover the insurance; but we do not find in the contract any provisions upon which any of these defenses could be rested. Nor have we been referred by counsel for the insurance company to any authority holding that under a policy contract substantially similar to this the representations in the application as to the good health of the applicant should be treated as continuing representations from the date of the application to the date of the delivery of the policy.

In National Life Ins. Co. v. Tweddell, 22 Ky. L. Rep. 881, we had a question like this. In that case Tweddell on September 4, 1897, signed an application for a policy of insurance and delivered it to the local agent of the company. The policy was issued on September 9th and delivered to Tweddell on September 16th. Tweddell was then dangerously sick of a disorder which had come on him some days after the application was made, and of which he died on September 19th. The application contained this stipulation: "This application shall be the basis of the contract for the insurance, and the contract applied for in the application shall not take effect until the first premium thereon shall be actually paid during the lifetime and good health of the assured."

It might here be observed that the record in this case shows that Tweddell was stricken with the illness from which he died on or before September 9, the date of the issual of the policy, and further observed that the stipulation in the policy that it should not take effect until the first premium was paid during the lifetime and good health of the assured was almost identical with a similar stipulation in the contract in this case. Another point of similarity consists in the fact that in the Tweddell case part of the premium was paid in cash and part by note, as in this case. In other words, all of the defenses made in this case were made in the Tweddell case, but the court affirmed the judgment of the lower court holding the company liable. To the same effect is Connecticut Indemnity Assn. v. Grogan's Admr., 21 Ky. L. Rep. 717.

Accordingly, we think that the clause in question was·

not a continuing representation that Brown would remain in good health until the application was accepted and the policy delivered; and that as the premium was paid when the application was made, the date of the application should be treated as the date of its acceptance by the company, and the contract should be considered as if fully executed on that date.

But if the application should, as contended by counsel for the insurance company, be treated as a continuing representation of Brown's good health, the company is, we think, estopped by its conduct to avail itself of the defense rested on the attack Brown suffered in Covington, Tenn.  There is no evidence in the record that Brown knew the attack there sustained was serious, or that it was material to the risk, or that he practiced any fraud or concealment in respect to it.  Bohon testified that at the time he delivered the policy to Brown he knew of this accident at Covington, Tenn.  "Q. Did you know that he had sustained a fall at that time? A. Yes, sir. Q. He told you he had a fall? A. Yes, sir. Q. What did he say about that? A. Why, I can't remember just word for word, but I asked him how he was, and he said that he had had a fall at some point in Tennessee; and stumbled over a step that was projecting from a doorway out on the sidewalk, and fell and knocked out several teeth. Q. Did he tell you that he had fallen in a faint or had an attack of epilepsy? A. No, sir. Q. Did you know anything about that? A. No, sir."

It thus appears that Brown very frankly told the agent, Bohon, the substantial facts touching the accident at Covington, Tenn.  There is some attempt to show that this fall was due to an epileptic attack, but there is but slight evidence to support it and no evidence that Brown knew it was due to this cause or to any cause seriously or in any material way affecting the condition of his health.

Now we think that the information conveyed by Brown to the agent of the insurance company was sufficient to charge it, before the delivery of the policy, with notice of the conditions upon which it now attempts, after Brown's death, to rely to defeat the collection of the insurance it agreed to pay his beneficiary. The company having notice of the accident to Brown before the delivery of the policy, had ample opportunity to make a full investigation of all the facts and circumstances connected with it

and determine for itself before the contract according to its contention was accepted whether it would consummate the contract, and to decline to accept it if not satisfied with the condition of Brown's health. But in place of availing itself of this opportunity, and declining, if it saw proper so to do, to deliver the policy at the time it delivered the policy to Brown, leaving him under the impression that the contract had been completed, and not until after his death did it attempt to make the inquiry that it should and could have made before the policy was delivered.

So that even if it should be admitted that this attack Brown sustained would have justified the company in refusing to deliver the policy yet we think the company is now estopped to make the defense rested on the change in the condition of Brown's health between the date of the application and the date of the delivery of the policy.

Our opinion is that when an insurance company, before it delivers the policy, or during the life of the insured, comes into possession of information that would reasonably put it on notice that some change had taken place in the physical condition of the insured which if it had known of the contract would not have been accepted, or if accepted, would have been cancelled, it must, if the information is received before the policy is delivered, refuse to deliver it, or if delivered must, within a reasonable time after receiving the information, take such steps as it thinks necessary to cancel the contract, and failing to do either of these things, it cannot, after the death of the insured, defeat the collection of the insurance money upon the ground that if it had known before the delivery of the policy, or during the life of the insured, what it found out after his death, it would not have accepted the contract, or, having accepted it, would have cancelled it. Masonic Life Assn. of W. N. Y. v. Robinson, 149 Ky. 80; Reserve Loan Life Ins. Co. v. Boreing, 157 Ky. 730.

Some question is made as to the competency of Bohon's testimony, but we think his evidence was competent and have considered the whole of it. Ratliff v. Daniel's Ex'r, et al., 137 Ky. 55.

The views we have expressed make it unnecessary to consider alleged errors in the instructions, as the trial court should have directed a verdict against the insurance company.

Wherefore, the judgment is affirmed.