## KANSAS CITY LIFE INS. CO. v. HISLIP.

No. 20503.   Opinion Filed Nov. 3, 1931.

Rehearing Denied Jan. 12, 1932.

Keaton, Wells, Johnston & Barnes and Frank W. McAlister, for plaintiff in error.

Ames, Cochran, Ames & Monnet, for defendant in error.

McNEILL, J.   This is an appeal from the judgment of the district court of Oklahoma county.   The parties will be referred to as they appeared in the trial court.   The plaintiff filed his petition against the Kansas City Life Insurance Company, alleging in substance that on July 5, 1927, said defendant issued to plaintiff its policy of insurance, whereby defendant insured the life of plaintiff in the sum of $10,000 and agreed that

should plaintiff, after payment of the first annual premium of said policy, become totally and permanently disabled by bodily injury or disease, said defendant would, upon receipt of proof of said disability, pay to plaintiff a monthly income of $10 per month for each $1,000 of the amount of the insurance named in said policy. It was further alleged that on or about August 1, 1927, plaintiff, as the result of tuberculosis, became totally and permanently disabled and has been since said date confined to his bed, and is wholly unable to transact any business or follow any occupation; that said total and permanent disability accrued after the payment of the first annual premium on said policy and before default was made in any subsequent payment and that said disability did not result directly or indirectly from any of the causes excluded under said disability provisions.

Plaintiff also alleged that, on or about July 10, 1928, due proof of said disability was delivered to said defendant; that said plaintiff has complied with all the terms and provisions of said policy; that under and by virtue of said provisions defendant has become indebted to plaintiff in the sum of $300 on account of such disability, and prays for judgment against said defendant in said amount.

To this petition defendant files its answer, admitting the allegations of the petition, except as therein stated, as follows:

"Defendant specifically denies that the total and permanent disability of plaintiff alleged in his petition accrued after the payment of a first annual premium on said policy, but defendant alleges that at the time such total and permanent disability accrued, the plaintiff had paid upon said first annual premium the sum of $39.69 and no more, and that for the balance of said first annual premium he had given his note to the defendant company for the sum of $115.89 due September 28, 1927, and which note was not paid until on or about the date the same became due. That by reason thereof the disability provision of said policy had not become effective and did not cover total disability accruing before the date of the actual payment of said first annual premium."

On March 2, 1929, plaintiff filed his motion for judgment on the pleadings for the reason that the matters contained in the answer of the defendant did not constitute a defense to the action, and prayed for judgment against said defendant. This motion came on for hearing on March 9, 1929. The court sustained said motion and rendered judgment in favor of plaintiff and against

defendant for $300, interest, and costs, to all of which the defendant excepted and the cause was regularly brought to this court upon the certified transcript of the record.

The facts are not in controversy. The only question presented for determination is whether or not under the pleadings the court properly rendered judgment for plaintiff.

The part of the provisions of the policy material to the determination of this case is as follows:

"Upon receipt, at the home office of the company, of due proof, upon blanks furnished by the company for that purpose, that, after the payment of the first annual premium upon this policy, and before default in the payment of any subsequent premium, and while the policy is in force, and before the insured has attained the age of 60 years, the insured has become and is totally and permanently disabled by bodily injury or disease, except as hereinafter provided, and will be continuously and wholly prevented thereby for life from engaging in any occupation, employment, or work for wages, gain, or profit, and that such permanent and total disability has existed during the preceding period of 30 days, the company will waive the payment of any subsequent premiums of this policy which fall due during the continuance of such total and permanent disability; and after the lapse of 60 days from the receipt of the aforesaid proof, if such total and permanent disability as herein defined has continued and then exists, the company will pay the insured a monthly income of $10 per month for each $1,000 of the amount of insurance named on the first page of this policy, the first of such monthly income payments to be made immediately upon approval of claim therefor, and a like amount on the corresponding day of each calendar month thereafter during the continuance of such total and permanent disability and the life of the insured."

It is admitted by the pleadings that plaintiff paid upon said first annual premium the sum of $39.68 cash, and gave his note to the defendant, due September 28, 1927, for the balance of said first annual premium, which note was paid on or about the date it became due.

Counsel for defendant, in their brief, state:

"Defendant specifically denies that the total and permanent disability of plaintiff alleged in his petition accrued after the payment of the first annual premium on said policy; but defendant alleges that at the time such total and permanent disability accrued, the plaintiff had paid upon said first annual premium the sum of $49.68 and no more, and that for the balance of said first

annual premium he had given his note to the defendant company for the sum of $115.89 due September 28, 1927, and which note was not paid until on or about the date the same became due. That by reason thereof the disability provision of said policy had not become effective and did not cover total disability accruing before the date of the actual payment of said first annual premium."

Counsel for plaintiff admit that, if the first annual premium had not been paid at the time plaintiff became disabled, then the defendant is not liable under the disability provision of said policy, and contend that the only question presented to this court for determination is whether or not on the date that plaintiff became totally and permanently disabled, the first annual premium on the policy had been paid within the meaning of said provisions. Counsel for defendant contend that the policy required payment of the first annual premium in cash, · or that payment in cash alone would create liability in this case. On the other hand, counsel for plaintiff contend that the first annual premium on the policy in question had been paid within the meaning of the provisions of said policy at the time the disability of plaintiff occurred, and that, if the actual amount of the premiums in cash was required, such manner of payment was waived by defendant when it accepted the cash and note of plaintiff, and it therefore became bound to pay the amount stipulated in the policy from and after such waiver.

This court, in the case of Mutual Life Insurance Co. v. Chattanooga Savings Bank, 47 Okla. 748, 150 P. 190, in the first, second, and third paragraphs of the syllabus, says:

"1. In the absence of an express agreement to the contrary, the acceptance of a check or draft in payment of a debt is conditional, depending upon the honor of the check or draft when presented, and in case of dishonor an action may be maintained upon the original debt.

"2. The annual premium stipulated for in a life insurance policy to be paid by the assured is not a 'debt,' and the strict rule governing the payment of debts by check or draft does not control the payment of such premium.

"3. The annual premium stipulated for in the policy in suit was payable in cash, and the insurance company had the right to demand cash in payment, but it also had the right to waive the payment in cash and to accept a check or draft in payment."

In that case, the annual premium stipulated for in the policy was payable "in cash," and the court held that the insurance company had a right to demand cash in payment, and that it also had a right to waive the payment of the premiums in cash "and to accept in payment notes, checks, drafts, or any other thing of value that might please it." In the case at bar there is no requirement in the policy that the premium be paid in cash. The policy provides:

"This policy is issued in consideration of the stipulations, agreements, and representations made in the application for this policy, * * * and in further consideration of the annual premium of $158.70 for one year's term insurance from date hereof. This policy will be continued upon the further payment of a like amount on or before the 5th day of July each year thereafter. * * *"

The Supreme Court of Kentucky, in the case of George Washington Life Insurance Co. v. Norcross, 198 S. W. 1156, stated as follows:

"Where agents are vested not only with apparent, but actual, authority to accept either cash or notes for the first year's premium, the company will not be permitted to say that they are its agents when accepting cash and not its agents when accepting notes. While as between himself and the company, the agent may be responsible for the amount of the premium represented by the note after deducting his commission, yet, as between the company and the insured, he is still the company's agent and not a mere private individual acting on his own responsibility. Any other rule would place the insured at the mercy of the insurance company, and frequently deprive him of insurance which he, as a reasonable man, had the right to believe was in full force and effect. Here the note was not only accepted by the local and state agent in payment of the first year's premium, but the note was subsequently paid and the net amount due the company paid to the state agent of the company. Under these circumstances, the acceptance of the note was a payment of the first year's premium as between the insured and the company."

This same court, in the case of American National Insurance Co. v. Brown (Ky.) 201 S. W. 326, stated in the second paragraph of the syllabus as follows:

"Where condition is that policy will not bind insurer until the premium is paid, acceptance of a note by the insurer constitutes payment."

In the body of the opinion, the court says:

"The only condition is that the premium must be paid annually in advance, and under this contract we see no reason why the execution of a note by the insured for part, or indeed the whole, of the premium should not be treated as a payment of the premium

within the meaning of the policy. The note executed for part of the premium was, as we have seen, made payable to the insurance company and was delivered to and accepted by its agent, who presumably had authority to accept the note in part payment of the premium. Plainly, to permit an insurance company to defeat the collection of the insurance upon the ground that a note taken by its agent was not to be regarded as payment of the premium would be to enable it to practice a fraud upon an insured who believed that the acceptance of the note was a satisfactory compliance with the requirements that the annual premium should be paid in advance.

"We have gone much farther than this by holding that the acceptance of a note in part payment of the premium will satisfy the condition in the contract that the premium must be paid in advance and in cash. This was determined in New York Life Ins. Co. v. Evans, 136 Ky. 391, 124 S. W. 376. In that case the court said:

" 'A number of cases have come before this court involving forfeiture features of insurance policies similar in many respects to this one. In those cases, as here, the insured had executed premium notes, in lieu of paying the premiums in cash. The standard form of life policies provides for the payment of premiums in cash in advance as condition precedent to the continuation of the contract. Yet, in each instance notes, conditioned as the one at bar, had been accepted by the insurers in lieu of the cash payments. It was once thought, and sometimes held, that the notes did not waive the stipulation for cash payment—that the insured carried the risk of dying uninsured until the premium note was paid in cash. That view was early abandoned. It is now universally held that the acceptance by the insurer of the note is a waiver of the policy provision for cash payment of the particular premium in advance'."

The policy in that case provided as follows:

"Any policy issued hereon shall not take effect until the first premium has been paid during my insurability."

On this provision, the court, in the body of its opinion, speaking in reference to the acceptance of the note for the first premium as constituting payment of the first premium, says:

"It will be observed that the stipulation we have quoted merely declares that any policy issued shall not take effect until the first premium has been paid during the insurability of the applicant, and we have already determined that the first premium was paid within the meaning of the policy when the application was made, and consequently paid at a time when there could

be no doubt about the insurability of Brown."

In the case of North Carolina Mutual Life Ins. Co. v. White, 130 Okla. 118, 265 P. 642, this court in the third paragraph of the syllabus said:

"When an insurance company issues a policy of life insurance and its agent delivers the policy to the insured, and such agent, on behalf of the insurance company, receives and accepts the promissory note of said insured for the amount of the first year's premium on said policy, this constitutes a completed contract and creates a liability on the insurance company under the terms of the policy."

In the body of the opinion, as follows:

"It is next contended by plaintiff in error that the evidence adduced by defendant in error, plaintiff below, did not prove a cause of action, insisting that the burden was upon plaintiff to prove that the company accepted the note in payment of the premium, or that the agent had authority to waive the condition in the application. Under the authorities hereinbefore cited, this contention is, in our judgment, without merit. Under these authorities, it was only necessary for defendant in error to make proof that she made her payments for the first year's premium to the agent in the manner alleged."

In the case at bar, the policy was delivered. A part of the premium was paid in cash and note executed for the balance due, which was paid on or before the due date provided for in said note. Under the North Carolina Mutual Life Insurance Co. v. White Case, supra, wherein it was shown by the evidence that the insured paid the agent $5 in cash and executed a note for $47.50, the balance of the premium, which was delivered to the agent, this court held that it was only necessary for the insured to make proof that she made her payments for the first year's premium to the agent in aforesaid manner to prove her cause of action against the insurance company, and that, when the insurance company issued its policy of insurance, and its agent delivered the same to the insured, and the agent received and accepted the promissory note of the insured for the amount of the first year's premium on said policy, the same constituted a complete contract, and created a liability on the insurer under the terms of the policy.

In the case at bar there is no question raised concerning the acts or authority of the agent, for the answer filed herein conclusively shows that the company itself accepted the note given by the plaintiff and delivered the policy herein to plaintiff.

In the case of Farnum v. Phoenix Ins. Co. (Cal.) 23 P. 869, wherein at the time of the fire and loss no part of the premium had been actually paid, and it was admitted in evidence that the local agent of defendant, at the time the policy was issued and delivered, verbally agreed and promised to give the plaintiffs a credit on the premium until October 1, 1887, and that the policy was taken by plaintiffs with that understanding and upon that condition, though the agreement for such credit was not indorsed in writing upon the policy, the Supreme Court of California in the opinion says:

"The defendant contends that there is no liability upon the policy, because the premium was not actually paid before the loss, and because the agreement for credit was not indorsed in writing upon the policy. It seems to be settled by a controlling preponderance of authority that an express provision in a policy of insurance that the company shall not be liable on the policy until the premium be actually paid, is waived by the unconditional delivery of the policy to the assured as a completed and executed contract, under an express or implied agreement that a credit shall be given for the premium; and that in such case the company is liable for a loss which may occur during the period of the credit. Boehen v. Insurance Co., 35 N. Y. 131, * * * Van Schoick v. Insurance Co., 68 N. Y. 440.

"The reason for this rule is well expressed in the case last above cited, as follows: 'The fact that the insurer delivered to the insured the written contract as the consummated agreement between them, and did not then exact present payment of the premium, as a necessary precedent to delivery, was too plainly in contradiction with the condition for prepayment for it to be supposed that it was meant by the insurer, or supposed by either party, that it was intended to make that condition a potent part of the contract. * * *

" 'It would be imputing a fraudulent intent to the defendant in this case to say or to think that they did not mean, when they delivered this policy to the plaintiff, to give him a valid and binding contract of insurance, or that they did not mean that he should believe that he had one, or that they did not suppose that he did so believe.' In Insurance Co. v. McCrea. 8 Lea. (Tenn.) 520, it is said: 'It seems to be well settled that, when a contract of insurance is executed with a full knowledge of an existing fact which would render it void under a condition precedent embodied therein, the condition or its breach will be considered as waived, because otherwise it would be an unmeaning form, the only effect of which would be to deceive and defraud'."

In the case of Masson v. New England Life Insurance Co. (Cal.) 260 P. 367, the California District Court of Appeals says:

"* * * It has been held in this state that, where an authorized credit has been agreed upon as the equivalent or substitute for cash payment of the premium, and the policy is delivered as a complete contract upon the consideration expressed therein, the receipt of which is 'impliedly acknowledged,' the insurer is estopped to deny the validity of the policy, notwithstanding the declaration in it that it shall not be binding until the premium is actually paid (Farnum v. Phoenix Insurance Co., 83 Cal. 246, 23 P. 869, 17 Am. St. Rep. 233). * * *

"Our attention has been called to no adjudicated case in this state involving a policy containing the identical recital of payment used here, but in the state of South Dakota, which maintains a statute (Civ. Code S. D. sec. 1849) in the exact wording of our Code, sec. 2598, a case arose wherein the policy not only contained forfeiture clauses similar to those embodied in the present policy, but, with reference to the payment of the first year's premium, recited:

" 'This policy is issued in consideration of the stipulations, agreements, and representations made in the application for the policy, * * * and said policy and the application constitute the entire contract between the parties hereto, and in further consideration of the annual premium of $50.17 for one year's term insurance; etc.

"The Supreme Court of that state held that the effect of the emphasized language was to 'clearly acknowledge receipt of the first premium,' and that, therefore, the company would not be heard to deny payment, in so far as the binding effect of the policy was concerned."

The case from South Dakota referred to, supra, was the case of Noble v. Kansas City Life Ins. Co., 33 S. D. 458, 146 N. W. 606. The identical language used in the policy quoted in the South Dakota case, supra, is found in the policy in question. The giving of the note in the instant case is not a part of the "stipulations, agreements, and representations made in the application for the policy," and it is not included as a part of the policy and the application which constitutes the entire contract between the parties herein. Masson v. New England Life Ins. Co., supra; Schumacker v. North American Life Ins. Co. of Omaha (S. D.) 169 N. W. 526.

In the case of Southern Life Ins. Co. v. Booker (Tenn. 1872) 9 Heisk. 606, wherein the agent delivered a policy of life insurance without the payment of the cash part of the premium, and received in lieu thereof a note for the amount of said premium, and where-

in the policy upon its face acknowledged the payment of the cash part of the premium, and wherein the written application for insurance, being a part of the contract, contained this provision:

"That the policy hereby applied for shall not be binding upon the company until the amount of the premium as stated therein shall have been received by said company, or some authorized agent thereof during the lifetime of the person therein insured"

—the Supreme Court of Tennessee, in the first paragraph of the syllabus, states:

"A policy of life insurance was conditioned not to be binding until the premium was paid, and the agents of the company were instructed to deliver policies only upon the actual payment in cash of the premium. Held, that a general agent of the company could waive the conditions and bind the company by an unconditional delivery of the policy without payment of the premium."

The court, in the body of the opinion, after a discussion of some of the authorities therein cited, stated:

"The agent, it is admitted, is authorized to receive the payment and deliver the policy. Being a general agent without special instructions limiting his power, he has the power to determine for himself what he is willing to accept as a payment of the cash premium. * * * Therefore we hold that Smithhurste, if he was a general agent of the company, had a right to waive the payment of the cash part of the premium and deliver the policy, and, if he did so, absolutely and unconditionally, in the absence of fraud, the delivery would be binding upon the company. * * * For the reason, as we have seen, that the agent having the power to waive this cash payment, it must be taken for the purposes of this question, that the payment has been in fact made. The note or promise of the party has been accepted as cash and must be so regarded. * * *"

In the case at bar the policy specifically provides under general provisions and privileges that "the first years' premium only may be paid to the agent." Under this policy the agent was a general agent authorized to receive the payment and to deliver the policy. In the absence of any special instructions he had the power to determine what he was willing to accept as a payment for the premium. He could, under the foregoing authorities, demand cash in payment of the premium, or he had the right "to accept in payment said premium notes, * * * or any other thing of value, not in conflict with law." Mutual Life Ins. Co. v. Chattanooga Savings Bank,

supra. To permit the insurance company to avoid its policy of insurance on the theory that a note accepted by the agent should not be regarded as payment of the premium would enable the insurance company to lull the insured into a false sense of security. The insured had a right, in the absence of fraud, and in this case none is pleaded, to conclude that when the agent accepted his note the company was satisfied with the requirements relative to the payment of the premium as provided for by the policy. Under the views expressed in the foregoing authorities, the company cannot be heard to deny payment in so far as the binding effect of the policy in question is concerned.

It would be manifestly unfair to permit an insurance company to deny its liability during the period it was holding the insured's note in case of loss or disability on the theory that the medium of payment which it accepted was not in compliance with its policy, and thereby prevent the insured from getting anything; and in the event of no loss or disability, to permit it to accept and collect the full amount on said note at the expiration of that period if no loss occurred, and when the insurance for which said premium was paid had never been in force. We conclude that the policy in question was in full force and effect from and after the date of its delivery and acceptance of the note by defendant.

Counsel for plaintiff also urge that the policy is incontestable under its own provisions, which policy provides as follows:

"This policy is absolutely free from restrictions as to residence, travel, or place of death, **and is incontestable after one year from its date.**"

In the case at bar, there is no fraud pleaded, nor is there any intimation that such was practiced by the insured in obtaining the policy in question. More than one year has elapsed since the policy was issued. Counsel for defendant admit that they are bound by the terms of the provisions of the policy, but contend that the company is not liable to make disability payments except upon proof that after the payment of the first annual premium upon the policy the insured has become and is totally and permanently disabled, and that in this case the insured became disabled before that payment was made.

The Supreme Court of California, in the case of Dibble v. Reliance Life Insurance Co., 149 P. 171, in dealing with the incontestable provisions of an insurance policy, states:

"In the first of these it was said: 'The defendant does not dispute that a period of more than one year had elapsed between the date of the policies and the death of the insured. The defendant contends, however, that the policies must have had a legal inception in order to sustain an action thereon, and that before the plaintiff could claim the benefit of the incontestable clause she must show that all the conditions precedent to the issuance of the policies have been complied with. To this contention it should be said that the policies were issued and were delivered; that the premiums due upon said policies were received by the defendant up to the time of the death of the insured; that the policies were treated by the insured and the defendant as subsisting contracts between them. The policies upon their face purport an obligation on the part of the defendant. To an action to enforce this apparent obligation the defendant interposes the defense that the insured was not in good health at the time of the delivery of the policies. Upon this ground the defendant is contesting its liability under the policy. Such a contest is within the scope of that clause which makes the policy incontestable after one year from its date if all due premiums shall have been paid, without by its terms excluding any ground of defense. To hold otherwise would be to permit such a clause in its unqualified form to remain in a policy as a deceptive inducement to the insured'."

Our court, in the case of Metropolitan Life Ins. Co. v. Peeler, 122 Okla. 135, 176 P. 939, in reference to the incontestability clause in a life insurance policy, says:

"The rights of the parties to this suit are therefore made to turn on the force and effect of the incontestable clause in the insurance policy, which expressly stipulates that it 'shall be incontestable after one year from the date of its issue, except for nonpayment of premiums.'

"It is to be presumed that the insurance company had some purpose in view when it offered to the insured a policy containing this stipulation, and that the stipulation itself had some meaning. It was not inserted as a mere matter of form. It was an inducement for the insured to take the insurance. * * *

"The meaning of the provision is that, if the premiums are paid, the liability shall be absolute under the policy, and that no question shall be made of its original validity. The language admits of no reasonable construction other than that the company reserves to itself the right to ascertain all the matter and facts material to its risk and the validity of its contract for one year; and that if within that time it does not ascertain all the facts, and does not cancel and rescind the contract, it may not do so afterwards upon

any ground then in existence. Mutual Life Ins. Co. v. Buford [61 Okla. 158] 160 Pac. 928; Clement v. Ins. Co., 101 Tenn. 22, 46 S. W. 561, 42 L. R. A. 247, 70 Am. St. Rep. 650; Thompson v. Fidelity Insurance Co., 116 Tenn. 557, 92 S. W. 1098, 6 L. R. A. (N. S.) 1039, 115 Am. St. Rep. 823; Wright v. Mutual Ben. Assn., 118 N. Y. 237, 23 N. E. 186, 6 L. R. A. 731, 16 Am. St. Rep. 749."

The policy which we are considering does not provide that the same shall be incontestable after one year from its date except for "nonpayment of premiums." There is no exception for nonpayment of premium. The policy was issued, delivered, and the premium paid. The policy specifically provides that, after the expiration of one year from the date of the policy, the same is incontestable.

We are of the opinion that the payment of part cash and the giving and accepting of a note prior to the time the disability of plaintiff accrued, which cash and note represented the amount of the first annual premium, constituted payment of the first annual premium within the meaning of the provisions of the policy of insurance in question.

Finding no reversible error, the judgment of the trial court is affirmed.

CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. LESTER, C. J., absent.