## Cogar Grain & Coal Company v. McGee.

(Decided November 27, 1931.)

486

C. E. RANKIN, RODMAN W. KEENON, and GUY BRIGGS for appellant.

E. H. GAITHER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, Cogar Grain & Coal Company, is a partnership composed of Clell Coleman and three others, to whom we shall herein refer as "plaintiffs." The appellee and defendant below, J. J. McGee, with his mother and sister, owned a farm in Mercer county containing about 350 acres. In 1924 and before the death of the mother, the owners entered into a contract with Phil Beasley, whereby on certain terms he was to cultivate the farm and the owners were to receive stipulated parts of the crops, which consisted of half of the wheat and corn, and the seed wheat was to be paid for and furnished equally by the landlords and the tenant. Other terms were inserted in the lease with reference to acquiring, fattening, and marketing live stock, and there is no doubt but that the contract created a partnership relation, or one of joint adventure, the difference between which is not material in this case. The contract was renewed from year to year, but before the matters here involved occurred the mother died, leaving defendant and his sister as the only owners of the farm. Defendant and his sister at the time and prior to the occurrences here involved were sojourning in New Mexico for the purpose of regaining their health, and Beasley was the only local manager of the farming enterprise in Mercer county.

Plaintiffs were engaged in general merchandise in Harrodsburg, Ky., and handled and sold grain as a part of their business. During the month of August, 1928, and while defendant was on a visit to his home in Harrodsburg, a quantity of seed wheat was purchased by him and Beasley on a joint trip to plaintiffs' place of business, and it was charged to the firm of "Beasley and McGee," or "McGee and Beasley," as was also true of a long-standing account between plaintiffs and the farming partnership. Some time near the holidays of 1928 Beasley and the defendant called upon plaintiffs to settle

their account to that date, and it was figured that the total sum was $559.40. Defendant gave his check for half of that amount, and Beasley did the same, but the latter check was never paid, and both plaintiffs and defendant in this case testified that all of them knew at the time that Beasley had no money in the bank upon which the check was given or elsewhere, and Mr. Clell Coleman, the member of the partnership with whom the transaction was had, testified that the check was not received in payment of the amount for which it was issued, but that he agreed to convert that much of the claim into the form of a check by Beasley, under the belief that payment of the latter could be more readily obtained than the payment of the account as it stood when the check was given, and defendant in giving his testimony stated that Coleman said on the same occasion that under the then existing cold-check law in this commonwealth he might be the better able to collect the check.

This action was filed by plaintiffs against defendant to collect the balance of the account represented by Beasley's check. Defendant denied liability and also interposed a plea of payment by his and Beasley's checks; but it was nowhere averred that in accepting the check of Beasley plaintiffs agreed to release defendant, and the latter testified at the trial that no such agreement was made. The jury before whom the case was tried returned a verdict for defendant, and plaintiffs' motion for a new trial having been overruled, they have filed a transcript of the record in this court with a motion for an appeal. In brief of plaintiffs' counsel three grounds are urged for reversal, which are: (1) The admission of incompetent evidence offered by defendant over plaintiffs' objection and exception; (2) error in overruling plaintiffs' motion for a directed verdict in their favor; and (3) error in instructions submitted to the jury, each of which will be disposed of in the order named.

■ The incompetent evidence complained of in ground 1 consisted in testimony heard in behalf of defendant to the effect that prior to the settlement plaintiffs had bought the corn crop of the farming partnership, half of which defendant received, and that plaintiffs applied Beasley's half to an individual account of his instead of crediting the partnership account with it. A mere statement of the proposition is sufficient to demonstrate its incompetency, because, if the course insisted

upon had been carried out, it would make Beasley pay with his half of the corn a part of the partnership account that was due from the landlords. However, what was done with reference to the corn transaction was and could not be material upon investigation of the matters involved in this action. At most, it could not possibly be a material matter of inquiry, except, perhaps, in some litigation involving that transaction, and which, of course, would have to be determined upon all the facts with reference to it, and which was not brought in the case by any pleading.

Another item of testimony is complained of under this ground, and which was testimony introduced by a former employee of plaintiffs in which he stated that he was familiar with the terms of partnership between the landlords and the tenant, and that, when so employed in paying for produce purchased from them he generally observed such partnership terms. But no one testified, or offered to do so, to the effect that there was ever any agreement or understanding between plaintiffs and any of those interested in the farming enterprise that any such course would be pursued by plaintiffs in the purchase of any produce from the farm, and, of course, what may have been done in that respect on former occasions would have no bearing upon the settlement of the partnership account on the occasion here involved. Before any such course of dealing or conduct could be made available for the purpose for which it was introduced in this case, it would have to be shown that plaintiffs agreed beforehand to look to each partner in the farming venture for his proportionate part of the firm account, and to not hold the other partner for such part. There was no testimony to that effect, and that given by the witness referred to was irrelevant and its introduction erroneous, and which brings us to a consideration of ground 2, which is the chief point in the case.

■ It is insisted by plaintiffs' counsel that the check of Beasley was not accepted in final payment of his or any part of the account, and that, since it was a partnership one, upon which each partner was bound for the whole, the acceptance of Beasley's check under the circumstances did not operate to release defendant, who was another partner in the farming enterprise. The text in 21 R. C. L., page 6, states that the authorities are unanimous "in supporting the rule that the giving of a

bank check by a debtor for the amount of his indebtedness to the payee is not, in the absence of an express or implied agreement to that effect, a payment or discharge of the debt, the presumption being that the check is accepted on condition that it shall be paid; and the debt is not discharged until the check is paid, or the check is accepted at the bank at which it is made payable. This has often been held true even where the person entitled to receive the money expresses a preference for its payment by check, but does not agree to assume the risk of its being honored." To the same effect is the text in 48 C. J. 617, sec. 50, and in note 21 thereto cases from almost every court in this country are listed, including those of Ratliff v. St. Paul Fire & Marine Ins. Co., 207 Ky. 492, 269 S. W. 546, and Carter v. Richardson, 60 S. W. 397, 22 Ky. Law Rep. 1204. See, also, Harbison v. Frazier, 64 S. W. 738, 23 Ky. Law Rep. 1115. Our investigation has convinced us that the rule is of practically universal application and is founded on sound sense and good reason.

That being true, the question is: Did plaintiffs accept Beasley's check, in this case in payment of his or any part of the farming account? Mr. Clell Coleman, who made the transaction for plaintiffs, positively testified that he did not do so, and it is not really contradicted by defendant, although he did testify that the check was received by Coleman and the account receipted, but he did not state in terms that Beasley's check was accepted by Coleman in final payment. On the contrary, he testified, as we have hereinbefore stated, that Coleman said at the time that he thought, with the aid of the cold check law, collection of the check could be made more readily than could the account, and which Coleman stated was done, not only to obtain collection for his firm, but for the benefit of the defendant, McGee. But, whether Coleman designed such a favor for McGee or not, the question still is, whether he accepted Beasley's check in final payment of any part of the account, and we have searched the record in vain to find that such' was the case. Moreover, it is not made to appear by either allegation or proof that there was ever any purpose on the part of the plaintiffs to release defendant from liability on any part of the entire account; but, if there had been, it is doubtful if there was any consideration for it. We, therefore, conclude that the court erred in not sustaining plaintiffs'

motion for a directed verdict in their favor, and which dispenses with the necessity of considering any of the matters complained of in ground 3.

Wherefore the motion for an appeal is sustained, the appeal is granted, and the judgment is reversed, with directions to sustain the motion for a new trial and to set it aside, and for proceedings consistent with this opinion.