# Republic Life & Accident Insurance Co. v. Hatcher.

(Decided June 21, 1932.)

ANDREW E. AUXIER for appellant.

E. D. STEPHENSON and STRATTON & STEPHENSON for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

This appeal is by the Republic Life & Accident Insurance Company from an adverse judgment upon a contract of insurance. It issued a policy to George F. Hatcher whereby it insured him in the principal sum of $1,000 against

"the effects resulting exclusively of all other causes from bodily injury sustained during the life of this

policy solely through external, violent and accidental means (excluding suicide while sane or insane, or any attempt thereat, while sane or insane), subject to all the conditions, limitations and exclusions, and within the amounts, hereinafter expressed."

Another paragraph of the policy provided:

"For death covered by the provisions of this policy, where it results from asphyxiation by illumiating gas, shooting self-inflicted, or poison self-administered, the amount payable shall be one-fifth of the principal sum."

The beneficiary designated to receive the indemnity in the event of the death of the insured was Minnie E. Hatcher, his wife. In this action on the policy by the beneficiary it was alleged that the assured, during the life of the policy, had died as a result of accident, and solely through external, violent, and accidental means. The defense, in its final analysis, was rested upon the contentions that the premium which constituted the consideration for the contract had not been paid, and that the death of Hatcher resulted from "poison self-administered," in which event the amount of indemnity agreed to be paid was only $200, or one-fifth of the principal sum named in the policy.

1. The policy was dated June 25, 1930, and called for the payment of a premium of $6 "on or before the delivery hereof." It was issued upon a written application forwarded by the agent, and was delivered to the insured about July 1, 1930. At the time the policy was delivered, Hatcher gave his check, payable to the order of the agent, for the initial premium. The check was dated July 10, 1930, and it was accepted by the agent as a payment of the premium. The insured, on July 9, 1930, became violently ill and died within an hour. It appeared that he had been in the habit of drinking heavily, and when on a spree would drink extracts or anything that contained alcohol. He had gone to the office of his brother-in-law, who was a physician, and in seeking an intoxicant had apparently taken copiously from a preparation containing strychnine, with the result stated. After the death of Hatcher, the agent collected the check for the premium from members of the family, and, after deducting his commission, the agent made remittance of the remainder

to the company. Learning meanwhile of the death of Hatcher, the company did not collect the check sent by the agent.

The check given to the agent by Hatcher was a negotiable instrument. Ky. Stats, secs. 3720b-1, 3720b-185. The holder could maintain an action thereon against the maker. Thomson v. Peck, 217 Ky. 766, 290 S. W. 722. The fact that it was postdated did not render it invalid, provided it was not dated ahead for an illegal or fraudulent purpose. Ky. Stats., sec. 3720b-12; Triphonoff v. Sweeney, 65 Or. 299, 130 P. 979; American Agricultural Chemical Co. v. Scrimger, 130 Md. 389, 100 A. 774. It is not claimed that the check for the premium was postdated for any illegal or fraudulent purpose, but simply that it was not a compliance with the contract which called for a payment "on or before delivery" of the policy. It is said that such a payment must be in cash. 32 C. J., p. 1200, sec. 333. A payment may be made by check if the parties agree that it shall constitute payment. 30 Cyc. 1207; 48 C. J., secs. 50, 51, pp. 617-619; Carter & Co. v. Richardson, 60 S. W. 397, 22 Ky. Law Rep. 1204; Harbison v. Frazier,·64 S. W. 738, 23 Ky. Law Rep. 1115; Cogar Grain & Coal Co. v. McGee, 241 Ky. 485, 44 S. W. (2d) 551; Ratliff v. St. Paul Fire & Marine Ins. Co., 207 Ky. 492, 269 S. W. 546.

It is proven that the check was accepted by the agent as payment of the premium and the check was paid at the time it was due to an agent having the right to receive the money. The acceptance of negotiable paper in payment of a premium is binding on the parties, even though the contract called for a cash payment. New York Life Ins. Co. v. Evans, 136 Ky. 391, 124 S. W. 376; American National Ins. Co. v. Brown, 179 Ky. 711, 201 S. W. 326; Kansas City Life Ins. Co. v. Hislip, 154 Okl. 42, 6 P. (2d) 678. The agent had authority to collect the premium, and the acceptance of a postdated check therefor was within the apparent scope of the agency. George Washington Life Ins. Co. v. Norcross, 178 Ky. 383, 198 S W. 1156; Inter-Southern Life Ins. Co. v. Duff, 184 Ky. 227, 211 S. W. 738; Henry Clay Fire Ins. Co. v. Grayson County State Bank, 239 Ky. 239, 39 S. W. (2d) 482; Federal Life Ins. Co. v. Warren, 167 Ky. 740, 181 S. W. 331; Globe Mutual L. Ins. Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387; Union Mutual Life Ins. Co. v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617.

It follows that the premium was lawfully paid and the policy was in force when the insured died.

2. The second proposition involves an interpretation of the contract of insurance as applied to the facts found to exist. The company argues that the amount of indemnity provided for poisoning, taken by the insured intentionally, but without knowledge that it was poison, was only $200, or one-fifth of the principal sum.

The evidence, although circumstantial, was adequate to support the finding that, in searching for an intoxicating drink, Hatcher had ignorantly swallowed a deadly poison. A drink was intentionally taken under the belief that it was an extract or decoction that would intoxicate, but with no intention of committing suicide and without knowledge of its death-dealing character. Such an occurrence is an accident within the terms of an insurance contract, and the fatal consequences are the result of external, violent, and accidental means. Woods v. Provident Life & Accident Ins. Co., 240 Ky. 398, 42 S. W. (2d) 499.

The beneficiary argues that the provision limiting the indemnity for death by shooting self-inflicted, or by poison self-administered, applies only to voluntary acts of the kind described and not to accidents. Her position is that the poison was not self-administered by the insured, but was accidentally swallowed in the belief that it was a potable substance. The insurance company insists upon a different construction. It says the insurance contract covered death by accident, but death by suicide was excepted from the coverage. The facts showing an intentional taking of the poison in the belief that it was something else made the case an accident, and excluded the notion of suicide. If the poison had been voluntarily taken in such quantity with knowledge of its character, the act would have constituted suicide, and the policy did not cover a death so caused; hence the provision for partial indemnity would seem to be unnecessary and ineffective unless it applied to accidental acts of the type presented. If an insured purposely shot or poisoned himself, the insurance was not in force for any amount; but, if he shot himself accidentally or administered to himself accidentally a deadly drug he was insured to the extent of one-fifth of the principal sum. Such has been the construction of similar contracts by several courts. Scales v. National Life & Accident Ins. Co. (Mo. App.)

186 S. W. 948; Id. (Mo. Sup.) 212 S. W. 8; Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 76 S. W. 745, 64 L. R. A. 349, 104 Am. St Rep. 857, 1 Ann. Cas. 252; Early v. Standard Life & Accident Ins. Co., 113 Mich. 58, 71 N. W. 500, 67 Am. St. Rep. 445; Pollock v. U. S. Mutual Accident Assn., 102 Pa. 230, 48 Am. Rep. 204. In Hill v. Hartford Accident Ins. Co., 22 Hun. (N. Y.) 187, the argument for the appellant is aptly stated:

"But the case is made unanswerably in favor of the defendant, as we think, inasmuch as the insurance did not extend to and cover a case of death 'caused by the taking of poison.' Here the death of the insured was undeniably so caused. This was the sole cause of his death, and death so caused was excepted from the policy in express terms. That the poison was taken unintentionally can make no difference in giving construction to the exception. This fact made the cause of death in this case accidental; hence the necessity of the exception in case the insurance was to extend to and cover this particular accidental cause. Nor is the exception limited to cases of intentional self-poisoning. That it was not intended to be so limited is manifest from the fact that there is another provision in the policy, which declares that no claim could be made under it, where the death or injury shall have been caused by suicide, felonious or otherwise, sane or insane."

The position of such courts is that the exception excludes all cases embraced within the most liberal terms of the exclusion, whether the result of accidental or intentional acts. 4 Cooley's Briefs on Insurance, p. 3193.

The holding in the New York case was subordinated to a construction of the policy there involved under which the particular misfortune of the assured was held "not to be an accidental death caused solely by external, violent, and accidental means." But that feature of the opinion was disapproved in Paul v. Travelers' Ins. Co., 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758, where an opposite conclusion was reached.

In the case of Riley v. Inter-State Business Men's Accident Association, 184 Iowa 1124, 169 N. W. 448, 2 A. L. R. 57, the policy by its terms relieved the insurer from risks of death resulting from poison voluntarily or involuntarily taken. It was held that no recovery could

be had for death from strychnine mixed in some unaccountable way, without the knowledge of the insured, in medicine which he had taken for an ailment.

On the other hand, the appellee adduces abundant authority for her position. Paul v. Travelers' Ins. Co., 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758; Travelers' Ins. Co. v. Dunlap, 160 Ill. 642, 43 N. E. 765, 52 Am. St. Rep. 355; Metropolitan Accident Association v. Froiland, 161 Ill. 30, 43 N. E. 766, 52 Am. St. Rep. 359; Dezell v. Fidelity & Casualty Co., 176 Mo. 253, 75 S. W. 1102. See annotation, 2 A. L. R., page 61.

These authorities sustain the position that words like "self-administered," when used in a contract of accident insurance, connote a voluntary and intelligent act, and not an involuntary and unconscious act which is purely accidental. If it had been intended to exclude all accidental deaths caused directly or indirectly by poison, it would have been easy to express the exemption in words of unlimited significance.

It must be conceded that the words are susceptible to either construction, and that each construction has been adopted by courts whose decisions are entitled to the greatest respect.

In such situation, we are constrained to adopt the construction most favorable to the insured, regardless of the persuasiveness of the argument or the weight of authority on the question. It is an accepted principle of. insurance law that a contract reasonably capable of two or more constructions must be given the interpretation most favorable to the insured. Phoenix Ins. Co. v. Slaughter, 12 Wall. 404, 20 L. Ed. 444; Phoenix Ins. Co. v. Spiers, 87 Ky. 285, 8 S. W. 453, 10 Ky. Law Rep. 254; American Accident Co. v. Reigart, 94 Ky. 547, 23 S. W. 191, 15 Ky. Law Rep. 469, 21 L. R. A. 651, 42 Am. St. Rep. 374; Champion Ice M. & C. S. Co. v. American Bonding Co., 115 Ky. 863, 75 S. W. 197, 25 Ky. Law Rep. 239, 103 Am. St. Rep. 356; Spring Garden Ins. Co. v. Imperial Tobacco Co., 132 Ky. 7, 116 S. W. 234, 20 L. R. A. (N. S.) 277, 136 Am. St. Rep. 164; Insurance Co. of North America v. Cheathem, 221 Ky. 668, 299 S. W. 545; New Amsterdam Casualty Co. v. Pickrell, 230 Ky. 354, 19 S. W. (2d) 955; Commonwealth Life Ins. Co. v. Leete, 224 Ky. 584, 6 S. W. (2d) 1057; Travelers' Ins. Co. v. Turner, 239 Ky. 191, 39 S. W. (2d) 216.

580

It follows that the circuit court was correct in its construction of the contract, and, as the finding on the facts was supported by evidence, the judgment cannot be disturbed.

The judgment is affirmed.